Duclos *v.* Turner

4-6883                                    166 S. W. 2d 251

Opinion delivered December 7, 1942.

*Neill Reed,* for appellant.

*George W. Barham,* for appellee.

SMITH, J.   This is a suit by appellant Duclos to enforce the specific performance of a contract to sell him a farm in Mississippi county. The contract was executed upon a form prescribed by the Federal Department of Agriculture, designated as F. S. A.-LE-188B. It appears to be, in substance, the same form of contract involved in the case of *Killingsworth* v. *Tatum,* 203 Ark. 354, 157 S. W. 2d 30, and its purpose was to enable persons who met the Government's requirements to borrow money from the Government with which to purchase farm lands to be used as a home by the purchaser.

The relevant portions of the contract are as follows. In consideration of $1, in hand paid, the owner of the land proposed to be purchased "agrees to sell and convey to A. C. Duclos or such other person as may be designated in his stead by the Regional Director of the Farm Security Administration of the United States Department of Agriculture for the region in which the land hereinafter described is located (hereinafter called the 'Buyer'), and hereby grants to the said Buyer the exclusive and irrevocable option and right to purchase, under the conditions hereinafter provided, the following described lands, (a description of which follows) . . ."

It was agreed that an unencumbered title should be conveyed, and that "This option is given to enable the buyer to obtain a loan from the United States acting by and through the Secretary of Agriculture (hereinafter called the 'Government'), pursuant to Title 1 of the Bankhead-Jones Farm Tenant Act (7 U.S.C.A., § 1000 *et seq.*), for the purchase of said lands. The purchase price of said lands is the sum of $15,137 for the tract as a whole."

The seller agreed to furnish a title insurance policy in favor of the Government in the amount of the pur-

chase price of the land, and to furnish an abstract of title and continuations thereof were required. The seller agrees that all taxes or other liens shall be satisfied, including expenses incident to execution of deed. If the title insurance policy is not furnished within a reasonable time, the buyer is given the right to procure the insurance and to deduct the cost thereof from the purchase price. The seller agrees to convey to buyer by a general warranty deed a valid unencumbered, indefeasible fee simple title.·

It was further provided that taxes·and all general or special assessments ''for the year in which the closing of title takes place, shall be prorated as of the date of the closing of title, it being expressly agreed that for the purpose of such proration the tax year shall be deemed to be the calendar year. . . Taxes on property due in 1941 will be paid by the party receiving rents from the 1941 crop. Buyer is to receive the rents if the vendor is paid before July 1. If payment is not made before July 1, then vendor will receive rents and pay buyer 3% interest on the option price from date payment is made until January 1. . . . This option may be exercised by the Buyer by mailing or telegraphing a notice of acceptance of the offer herein to Mrs. Tera F. Turner in the city of Blytheville, RFD No. 2, State of Arkansas, at any time while the offer herein shall remain in force.

''The offer herein shall be irrevocable for a period of 4½ months from date hereof, and shall remain in force thereafer until terminated by the Seller, . . . , at any time after the expiration of such period by the giving of ten days' written notice to the Buyer of such termination.''

This writing was signed by Mrs. Turner, and was dated January 14, 1941, and following her signature there was written an acknowledgment of the payment to her of the sum of $1; but Mrs. Turner denied that this was paid her.

The complaint praying the specific performance of this contract was dismissed as being without equity, and this appeal is from that decree.

The chancellor prepared a written opinion upon rendering this decree, which recited the reasons therefor. The court distinguished the contract here sued on from the one involved in the case of *Killingsworth* v. *Tatum, supra,* the distinction being that the opinion in that case recited that the option there involved was executed for a valuable consideration, whereas the consideration here is merely nominal. Upon this view the court below held that "such a contract may be revoked by the maker at any time before acceptance by giving the vendee in the contract notice of revocation." This holding was made upon the authority of the opinion in the case of *Hogan* v. *Richardson,* 166 Ark. 381, 266 S. W. 299, in which case it was sought to enforce an option to purchase an interest in certain oil and mineral lands under a contract which recited the·consideration to be the sum of $1 in hand paid. It was there.held (to quote a headnote) that "An option for the sale of land for a nominal consideration may be withdrawn at any time before acceptance, on notice to the vendee, but, where a valuable consideration is paid for an option, it cannot be withdrawn by the vendor before expiration of the time specified therein."

The contract here sought to be enforced recites that it was executed upon a consideration of $1 in hand paid, and if there were no other consideration the rule above quoted would apply. We think, however, that it appears from the recitals of the.contract, above quoted, that there were other considerations moving the parties to the contract. Duclos assumed the obligation recited, which suffices to constitute a valid consideration.

It was known to the parties to this contract that Mrs. Turner had given a mortgage on the land to an insurance company, to be repaid over a period of years, and that she proposed to discharge this indebtedness with a part of the purchase money she was to receive; but the insurance company declined to accept prepayment of this debt for the full amount thereof with accrued interest.

It is undisputed that Mrs. Turner advised Duclos and the FSA Director that she could not sell the land unless an arrangement could be made to pay off this

mortgage indebtedness; and it is also undisputed that she advised them that if the mortgage indebtedness could not be discharged nothing further would be done in the matter.

It developed that the FSA Director had assumed an obligation on the part of the Government to make a loan which he was not authorized to make, as he was not authorized to make a loan of more than $5,400 to any one person. Duclos sought to obviate this difficulty by an arrangement for two other persons possessing the qualifications required by the Government to borrow money for this purpose; this arrangement was that each of the three persons should buy a one-third interest.

There was, therefore, a binding contract to convey between Mrs. Turner and Duclos, but it appears that they had entered into a contract impossible of performance on the part of Duclos. It was impossible of performance for the reason that the whole matter was contingent and dependent upon Duclos borrowing from the Government the sum of $15,137 to pay "for the tract of land as a whole." The sale of the entire tract of land was contemplated, and not divisible parts of it. Duclos admitted that he had no means of his own with which to buy the land, and that his ability to comply depended entirely upon making a loan from the Government, and this the Government could not and would not do, because no loan for this purpose could be made in excess of $5,400.

Now, it is true that Duclos produced two other persons who desired to join him in this purchase who were eligible under the Government regulations to borrow the maximum sum of $5,400 each, and that he and those other two could borrow a sum in excess of the amount Mrs. Turner agreed to take. But because Duclos had a valid contract, based upon a sufficient consideration, to buy the land, it does not follow that Mrs. Turner was required to divide this land and sell it in parts. She had no contractual relation with Duclos' associates, and had received no consideration of any kind from them, or either of them. One of the parties who had been invited by Duclos to join in the purchase of the land testified that he and Duclos

called on Mrs. Turner and advised her of their arrangement; but he admitted that she declined to proceed under that arrangement.

Now, the option contract does provide that Mrs. Turner "offers and agrees to sell and convey to A. C. Duclos or such other person as may be designated in his stead by the Regional Director of the Farm Security Administration of the United States Department of Agriculture." But if this provision can be said to be valid as contemplating that the substituted purchaser would assume the same obligations imposed upon Duclos, yet, if this be assumed, as much as can be said of this provision of the contract is that it authorizes the substitution of another purchaser for Duclos who would pay the lump sum of $15,137 for the property; and no one proposes to do this.

It is easily conceivable that, if permitted, Duclos would consummate the purchase for himself of a third of this farm, and that one or the other of his associates might also purchase another third, whereas the other party might not consummate his purchase, in which event Mrs. Turner would have sold, not all of her farm, as she contracted to do, but only a part thereof.

The opinion of the court contains a finding, which the testimony not only supports, but which appears to be undisputed, "that the purported acceptance (the written acceptance) was not delivered to the defendant until June 10, 1941, which was more than 4½ months after the execution of the contract. It is contended that under the terms of the contract it was to continue in force until written notice was given plaintiff of its revocation. The contract contains such a condition, but I can not conceive that the condition is of greater force or effect than the offer contained in the option."

The opinion in the case of *Bracy* v. *Miller,* 169 Ark. 1115, 278 S. W. 41, reviews the question of mutuality of obligation as a condition upon which the right to enforce specific performance depends, and the rule is stated that there must be mutuality both as to the obligation and the remedy before this relief will be awarded; and it was

1006

specifically held in the case of *El Dorado Ice & Planing Mill Co.* v. *Kinard*, 96 Ark. 184, 131 S. W. 460, (to quote a headnote) that "A contract which leaves it entirely optional with one of the parties as to whether or not he will perform his promise is not binding upon the other."

Here, not within 4½ months, nor at all, at any time, has either of Duclos' associates obligated himself to do anything, and Mrs. Turner has no right which she could enforce against either of them. It must, therefore, follow that they have no right against Mrs. Turner which Duclos can enforce for their benefit.

The decree must, therefore, be affirmed, and it is so ordered.