RUSSELL *v.* HILL.

5-3152                                          375 S. W. 2d 661

Opinion delivered February 24, 1964.

*Russell & Hurley,* for appellant.

*O. W. Pete Wiggins,* for appellee.

ED. F. MCFADDIN, Associate Justice. This litigation involves an option deed. Walter Hill and his wife were plaintiffs below and are appellees here; and Tommy H. Russell and his wife were defendants below and are appellants here.

On an uncertain day[1] in April 1962 Walter Hill and wife executed an instrument, whereby Tommy H. Rus-

---

[1] The instrument states that it was prepared by Tommy H. Russell. It was recorded in the Office of the Circuit Clerk on April 4, 1962. Both the instrument and acknowledgment leave the day blank. We copy the full instrument:

"OPTION DEED.

"FOR AND IN CONSIDERATION of the sum of One Dollar, to me in hand paid, the receipt of which is hereby acknowledged, and the undertaking of Tommy H. Russell to pay Walter Hill and Shirley Hill the sum of $21,300 (Twenty-one thousand three hundred Dol-

sell acquired an option to purchase a lot for $21,300.00, provided the said amount was paid on or before April 1, 1963. On February 8, 1963, Hill and wife filed this suit to have the instrument declared void and removed as a cloud on their title. On February 28, 1963, Russell and wife filed their answer as follows:

"Come the defendants to Answer the Complaint in Equity to Cancel Deed and Quiet Title in Plaintiffs and by way of doing state:

"That they deny each and every material allegation contained in the complaint of the plaintiffs filed herein.

"WHEREFORE, defendants pray that this cause be dismissed, for their costs herein expended and for all other proper relief."

The cause was heard *ore tenus* by the Chancery Court. The plaintiffs claimed that no consideration of any kind was ever paid them; that the instrument was a mere offer to sell and, as such, could be withdrawn at any time; and plaintiffs cited and relied on such cases[2] as *Jones* v. *Lewis,* 89 Ark. 368, 117 S. W. 561; and *Lane* v. *Jackson,* 135 Ark. 384, 205 S. W. 650. The defendants claimed that the option deed was for a valuable consideration and could not be withdrawn. The only witness for the defendants was Russell; and he testified: (a)

lars), on or before the 1st day of April, 1963, we hereby grant, bargain, sell and convey unto the said Tommy H. Russell and to his heirs, successors and assigns, upon the conditions hereinafter written, the following described land, situated in Pulaski County, State of Arkansas, to-wit:

"Lot Seven (7), Block Four (4), Baums Re-subdivision to the City of North Little Rock, Arkansas.

"If said Tommy H. Russell shall fail to pay the sum hereinbefore named within the times above set forth, this conveyance shall be void, and all rights and liabilities of either party thereunder shall cease, and said land shall revert to us without any reconveyance from the said Tommy H. Russell. "And I, Shirley Hill, wife of said Walter Hill, hereby release and relinquish unto the said grantee all my right of dower in said land.

"WITNESS our hands this _____day of April, 1962.

"/s/ Walter Hill
"/s/ Shirley Hill."

[2] To these could be added *Duclos* v. *Turner,* 204 Ark. 1000, 166 S. W. 2d 251; and *Kelley* v. *Coldren,* 226 Ark. 266, 290 S. W. 2d 424.

that on January 6, 1961 the Hills had listed the property with Wallace Realty Company for sale at $21,300.00; (b) that the listing was for 120 days; (c) that the Hills cancelled the listing before the 120 days; (d) that Wallace Realty Company filed suit against the Hills for damages of $2,130.00 because of such cancellation; (e) that Russell was attorney for the Wallace Realty Company; (f) and that in March 1962 the said case of *Wallace Realty Company* v. *Hill* was dismissed in consideration of the Hills executing the option deed to Russell, as previously copied.[3] Thus, the effect of Russell's testimony was that there was a real and valuable consideration for the option deed and that the option could not be cancelled by the unilateral action of the Hills, as here attempted; and to sustain them the appellants cite such cases as *Hogan* v. *Richardson,* 166 Ark. 381, 266 S. W. 299; and *Kelly* v. *Keith,* 77 Ark. 31, 90 S. W. 150.

The Chancery decree was in favor of the plaintiffs both on the consideration issue and also because Russell had made no tender. The decree was entered on April 3, 1963, and contains, *inter alia,* this language:

"The Court further finds that the purported Option Deed was no more than an offer to sell and inasmuch as a nominal and not adequate consideration was mentioned in the said Deed, the Court further finds that the nominal consideration has never been paid. This Court having heard this portion of the case on March 27, 1963, this Decree having been prepared and presented to the Court on the date of the signing hereof, the Court finds that in addition thereto, that the defendants, and each of them, have failed to tender, offer or pay any money on or before the expiration of April 1, 1963, and that said Deed has also expired on the date of the signing of this Decree."

Thus the Chancery Court assigned two reasons for ruling against the appellants: (a) no consideration was

[3] The appellees insist that the Wallace Realty Company might have claimed that the dismissal of its lawsuit against the Hills was a valuable consideration for an option to Wallace Realty Company, but that Russell, as attorney for the Wallace Realty Company, cannot so claim.

paid by Russell for the option deed; and (b) Russell never made any tender of the $21,300.00 before the option deed expired on April 1, 1963. Regardless of this first point, we agree with the Chancery Court on the second point—*i.e.*, absence of tender; and therefore we affirm the Chancery Decree. The cases hold with practical unanimity that the optionee must make tender of the money within the time stated in the instrument. In 55 Am. Jur. p. 508 *et seq.*, "Vendor and Purchaser" § 39 *et seq.*, the holdings are summarized in this language: "To constitute a valid exercise of an option to purchase land and impose a duty on the vendor to convey, the terms and conditions of the option must be complied with by the purchaser . . . It is universally held, not only at law but also in equity, that the time named for the exercise of an option is to be regarded as of the essence of the option, whether so expressly stated or not. Unless an option is exercised within the time limited, the rights of the optionee expire without notice or declaration of forfeiture."

Thus whatever right—if any—Russell may have had under the option expired by the terms of the instrument before the entry of the decree, unless Hill did something that would excuse Russell from notice of acceptance of the option and tender of the purchase money. In this Court, Russell seeks to excuse himself from tender on the basis that the filing of this suit by Hill in February 1963 was a repudiation of the option and, as such, excused tender until after the conclusion of this litigation; and Russell cites and relies on such cases as *Read's Drug Store* v. *Hessig-Ellis,* 93 Ark. 497, 125 S. W. 434; and *Doup* v. *Almand,* 212 Ark. 687, 207 S. W. 2d 601; and to these could be added *Dickinson* v. *McKenzie,* 197 Ark. 746, 126 S. W. 2d 95. But we hold that these cases are not applicable here because of the factual situation existing in this case, as will be later shown.

In 55 Am. Jur. p. 510, "Vendor and Purchaser," § 40, the holdings are summarized:

"Under some circumstances the optionee's delay in exercising the option has been held to be excused by various acts and statements of the vendor, such as statements and representations calculated to cause delay, the vendor's absence or his evasive conduct, his failure to furnish necessary information, or to furnish the required title, or evidence or history thereof, the vendor's repudiation, or statements or acts of the vendor amounting to a waiver of exercise of the option at the time stated in the option."

In 157 A.L.R. p. 1311, there is an annotation entitled: "When optionee's delay in exercising option excused"; and in discussing repudiation the holdings are summarized:

"It is a general rule that where the exercise of an option contemplates tender of the purchase price as a part of the acceptance, repudiation of the contract by the optionor, in the face of readiness, willingness, and ability to conform on the part of the optionee, excuses tender during the time limited, and entitles the latter to all available remedies, including specific performance . . .

"It is to be observed, in cases involving option contracts which require a tender as part of an indication of acceptance, in order to exercise an option to purchase, that even though the optionee may be excused from making a timely tender by reason of repudiation of the contract by the optionor, he must, under the familiar rule of contracts relating to offer and acceptance, in order to establish any equitable contractual relations with the latter, indicate to him definitely an acceptance and willingness to proceed with the contemplated transaction."

The facts in the case at bar show that Hill did nothing to excuse a tender. He was anxious at all times to sell the property for $21,300.00; and so testified. He admitted signing the option deed, but claimed that there was no consideration, and that Russell was holding the option until April 1, 1963, on the hope of turning the property at a profit. Hill wanted the option terminated

so that he could speedily sell the property. Under such a factual situation what was the burden resting on Russell? To definitely accept the option and to make a tender within the time stated in the written instrument. When Russell filed his answer herein—as previously copied in full—he merely made a general denial. In his testimony he never at any time said that he had exercised, or intended to exercise, the option. The point was made in the Chancery Court that Russell had never made any tender. Hill repeatedly testified that he wanted to sell the property for $21,300.00, as stated in the option deed, but did not want to delay the matter. Yet in the face of all such testimony, Russell never stated that he wanted to exercise, or intended to exercise, the option and make the payment. Certainly he made no tender. So whatever right—if any—he may have originally held under the option, had expired before the entry of the decree.

Affirmed.