### SUN OIL COMPANY

v.

### FRANKLIN COMPANY.

Supreme Judicial Court of Maine.

Nov. 6, 1973.

Preti & Flaherty by David M. Cohen, Portland, for plaintiff.

Linnell, Choate & Webber by G. Curtis Webber, Auburn, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK and ARCHIBALD, JJ.

WERNICK, Justice.

On October 26, 1971 plaintiff, Sun Oil Company, commenced in the Superior Court (Cumberland County) a civil action against defendant, Franklin Company, seeking a declaratory judgment that plaintiff (1) had effectively exercised an option conferred by a lease executed by defendant

(as lessor) and plaintiff (as lessee) to purchase the

"...leased premises, together with all buildings, improvements and equipment . . . for the sum of Forty Thousand and Thirty-Eight Dollars. . . . .";

and (2), therefore,

"...is entitled to a good and sufficient warranty deed . . . and/or a bill of sale of the demised premises and all buildings, improvements and equipment erected thereon, in return for payment by the Plaintiff of $40,038.00."

Defendant, by answer, contested the claim on the single ground that plaintiff had failed to comply with a condition precedent to a valid exercise of the option —that plaintiff " . . . [give] ninety (90) days' written notice prior to the expiration date" of the lease.[1]

The issue was submitted to the Justice presiding in the Superior Court to be decided on a stipulation of facts of which the following are the most significant to delineate the underlying problem.

The lease was executed on November 29, 1955. It leased real property of defendant situated on Lisbon Street in Lewiston, Maine, to plaintiff for use as a gasoline service station. Provisions concerning the expiration date of the lease were contained in a typewritten insert and were, along with other typewritten matter, incorporated into a printed form serving as the foundational lease instrument. Designated Paragraph 3(a), the typewritten insert stated:

"This lease shall be in full force and effect from the date hereof for a period of 15 years from the date that the building and improvements referred to in para-

graph 2 hereof are completed and accepted by [Sun Oil] Company in writing in accordance with the plans and specifications, Company's written acceptance shall not unreasonably be delayed or withheld."

Paragraph 2 required that the defendant, at its own cost, erect on the premises a service station building and improvements in accordance with prescribed plans and specifications.

Two local firms, Stanley Faibisy Contracting Co., Inc., and E. & A. Bilodeau Bros., Inc., undertook the project of constructing the service station and improvements.

Under date of October 19, 1956 the two building contractors sent to the plaintiff a document identified as "Requisition # 4" addressed to 835 Statler Bld'g., Boston, Massachusetts and marked "ATT: Engineering Dep't." The contents included the following:

| "O. B. Agreement dated | | | |
|---|---|---|---|
| May 9th. 1956 | | | $18,725.00 |
| Amount of work completed to date 100% | | | $18,725.00 |
| less 15% retained | | | $ 2,808.75 |
| | | | $15,916.25 |
| CREDITS | Requisition # 1 | $3,979.06 | |
| | Requisition # 2 | $3,979.06 | |
| | Requisition # 3 | $3,979.07 | |
| | Total credits | | $11,939.19 |
| | Amount of Requisition # 4 | | $ 3,979.06 |
| BALANCE 15% retained $2,808.75" | | | |

After receipt of Requisition # 4, in a letter dated October 26, 1956 plaintiff proposed certain terms and conditions to be accepted in writing by defendant. Defendant accepted plaintiff's proposals. There thus was effectuated between plaintiff and defendant an agreement of the following tenor:

"In view of the fact that the service station building and improvements . . .

said leased premises, together with all buildings, improvements and equipment created thereon and owned by Lessor [Franklin Company] for the sum of Forty Thousand and Thirty-eight Dollars ($40,038.00)."

---

1. The option to purchase was conferred by Paragraph 7(c) of the lease in the following language:
"... [Sun Oil] Company shall have the option to purchase at the expiration of this lease by giving ninety (90) days' written notice prior to said expiration date, the

are substantially completed, we [Sun Oil Company] . . . take possession of the service station on the 26th day of October, 1956, and payment of rents shall be determined from the 26th day of October, 1956, but with the understanding that occupation of the station and the payment of rents shall not be deemed final acceptance of the station in accordance with the terms of our lease. Final acceptance of the service station shall be evidenced by the written approval of Company's Regional Engineer. . . .."

On October 26, 1956 plaintiff made its first payment of rent to defendant and thereafter paid rent regularly on the 26th day of each month.

Requisition #4 was not approved for payment by plaintiff until almost a month after October 26, 1956, when, under date of November 20, 1956, the Regional Engineer of plaintiff (one, O. L. Colavecchio) wrote a letter to C. L. Abbott, as Treasurer of defendant, addressed to defendant at 112 Park Street, Lewiston, Maine. The letter said:

"We are attaching hereto invoice [Requisition # 4] . . . covering request for payment for 100 per cent completion of the service station improvements . . . less 15 per cent retained.

"This invoice is in accordance with O. B. Agreement dated May 9, 1956 [the OWNER–FINANCED BUILDING AGREEMENT as referred to in Paragraph 2 of the lease] and has our approval for payment. Kindly make your check payable to both contractors. Your usual kind and early remittance to the contractor will be greatly appreciated."

By letter dated December 5, 1956, written to the Treasurer of defendant company (not at its Lewiston address but to an address designated as "Merchants National Bank, 513 Boylston Street, Boston, Massachusetts"), the Regional Engineer of plaintiff notified defendant that another invoice had been received from the building con-

tractors in the amount of $2,808.75 (the 15% retained) representing

" . . . request for final payment in connection with the construction of the service station improvements . . .."

The letter stated that the invoice was in accordance with O. B. Agreement and had the plaintiff's "approval for payment" and should be paid by defendant.

During the fifteenth year thereafter, by letter dated and postmarked, July 27, 1971, and received by defendant on July 29, 1971, plaintiff purported to exercise its option to purchase the leased service station premises, improvements and equipment.

The foregoing facts crystallize the issue governing the rights of the parties—the determination of the expiration of the

"period of 15 years from the date that the building and improvements . . . [were] completed and accepted by [Sun Oil] Company in writing in accordance with the plans and specifications, . . ."

since, by virtue of Paragraph 3(a) of the lease, the expiration of the fifteen years establishes the expiration date of the lease which, in turn, is the reference point for the adjudication of whether plaintiff gave timely written notice for the effective exercise of its option to purchase.

Defendant maintains that the 15 year period commenced on October 26, 1956 when plaintiff entered into occupancy of the premises and made the first payment of rent. It thus fixes the expiration date of the lease as fifteen years thereafter, October 25, 1971. Accordingly, defendant claims, plaintiff failed to give the requisite ninety (90) days' written notice. The argument is that if the mailing date of plaintiff's letter, July 27, 1971, is to be taken as the date legally determinative of the "giving" of written notice, there was, in legal contemplation, less than the requisite ninety (90) days between July 27, 1971 and October 25, 1971 (a proposition which plaintiff disputes); and if the date of the re-

ceipt of the letter, July 29, 1971, be the legally governing date, unquestionably, there was less than ninety (90) days' notice given.

On July 21, 1972 the presiding Justice decided in favor of the plaintiff, stating no findings or legal reasoning in support of his decision but only the ultimate conclusion that

"the plaintiff did effectively exercise its option to purchase and . . . is entitled [to] conveyance of the premises and equipment upon payment of the purchase price in accordance with the terms of the agreement."

From the judgment entered on the order of the presiding Justice defendant has appealed to this Court.

We deny the appeal.

■ We hold that even if we assume, without need to decide, that the later date, July 29, 1971, (when defendant received the written notice of plaintiff)—rather than the earlier date on which it was mailed (July 27, 1971)—is the date on which written notice was "given", the expiration date of the lease was sufficiently subsequent to October 25, 1971 (the date claimed by defendant to be the expiration date of the lease) to establish that plaintiff had validly given the necessary ninety (90) days' written notice.

Defendant supports its position that October 25, 1971 was the expiration date of the lease by an argument constructed, essentially, upon the provisions contained in the lease in its originally executed form and substance. Defendant stresses that, specifically, Parargaph 4 of the lease says:

"rent shall not accrue until the date on which the buildings and improvements . . . are completed and accepted in writing . . ."

and, generally, the lease provisions in their total import clearly reveal that it was the expectation of the parties that plaintiff's subsequent occupancy of the premises and improvements would be undertaken "simultaneously, or nearly so" with the "acceptance in writing" of the premises by the plaintiff—thus to generate a concomitant obligation of plaintiff to pay rent. Hence, defendant claims, when plaintiff wrote its letter of October 26, 1956, acknowledging as fact that the service station building and improvements had been "substantially completed", and thereupon entered into possession and commenced the payment of rent, plaintiff must be deemed to have "accepted . . . in writing" the building and improvements as "completed . . . in accordance with the plans and specifications."

We find defendant's position untenable. It fails to account adequately for the scrupulous care with which plaintiff imposed plain and express additional conditions, as to which plaintiff was requiring defendant's written acceptance, before plaintiff would enter into occupancy and commence the payment of rent as of October 26, 1956. These precautions of plaintiff disclose that plaintiff had calculatedly determined to preclude, and had in fact foreclosed, precisely the interpretation of plaintiff's conduct which defendant is now attempting to assert.

In our view the proposals in plaintiff's letter of October 26, 1956, as accepted in writing by defendant, establish in clear and explicit language a supplemental clarifying agreement of the parties that (1) plaintiff's occupancy of the building and improvements, and payment of rent in return therefor, was *not* plaintiff's acceptance in writing within the meaning of Paragraph 3(a) of the lease, and (2) such acceptance would *not* be forthcoming until a later time when it would be

"evidenced by the written approval of [Sun Oil] Company's Regional Engineer."

This conclusion, derived from the textual language of the October 26, 1956 agreement of the parties, is confirmed by the to-

tality of the circumstances surrounding its execution.

As defendant asserts, the provisions of the lease as originally executed would strongly suggest, *unless the parties were otherwise to agree,* that the conduct of plaintiff in taking occupancy of the building and improvements and in paying the rental amount to defendant should be deemed equivalent to a representation that plaintiff was satisfied with the building and improvements and was, therefore, accepting them. It is reasonable, consequently, to infer that on October 26, 1956 such plain import of the lease, as executed on November 29, 1955, was fully understood by plaintiff and defendant as a factor to be reckoned with in any action to be taken by them relative to the "substantial" completion of the building and improvements.

While "substantial" completion of the building and improvements created a prospect that there could be an immediate mutual benefit to the parties, insofar as plaintiff could forthwith enter into occupancy and commence to pay rent to defendant, from plaintiff's point of view there was another matter of special importance. Plaintiff was aware that its own internal managerial and bureaucratic processes would be likely to produce considerable delay (as it eventuated, almost two months) before plaintiff's engineering department would be able to certify the construction work as truly, and totally, completed in accordance with all the plans and specifications.

Thus, the problem confronting plaintiff on October 26, 1956 was whether, were it to take advantage of the *"substantial"* completion of the building and provide a mutual benefit to plaintiff and defendant through immediate occupancy and payment of rent, plaintiff should nevertheless, simultaneously, withhold its written acceptance of the building and improvements as being completed in accordance with all plans and specifications.

In this context, it is important to bear in mind that, in light of the provisions of Paragraph 8(d) of the lease, plaintiff had good reason to withhold its acceptance of the building and improvements until it had been given appropriate assurances by its own engineers that there had been full compliance with the plans and specifications. Paragraph 8(d) stated:

"If Paragraph 2, sub-section (a) so provides, and Lessor . . . shall fail to erect or install or cause to be erected or installed on the leased premises, the buildings, improvements or equipment as set forth in said plans and specifications on or before August 1st, 1956, Company [Sun Oil Company] at Company's option, may either terminate this lease by giving written notice of cancellation to the Lessor, *or, at the expense of and for the account of Lessor,* . . . erect, install or *complete* such buildings, improvements or equipment and *retain all rents or such portion necessary for the purpose of reimbursing Company* for the cost thereof, with interest thereon at 6% per annum if Lessor fails to pay Company the cost and expenses thereof promptly." (emphasis supplied)

Thus, by declining "acceptance in writing" until it had received the certification of its own engineering department, plaintiff would not engender doubt that it had retained a right to assert the benefits afforded by Paragraph 8(d). This protection minimized the need that plaintiff be concerned as to the sufficiency of the amount of retainage provided by the OWNER–FINANCED BUILDING AGREEMENT since it allowed plaintiff to apply rents, as necessary, to reimburse itself for the cost of bringing the building and improvements into full compliance with the plans and specifications.

Plaintiff's letter of October 26, 1956, containing proposals for which plaintiff required the written acceptance of defendant before plaintiff would proceed, represented

plaintiff's decision as to the course it would pursue and the manner in which the problem was to be resolved. It was, in our view, plainly calculated to, and did, once it was accepted by defendant, establish an unequivocally explicit clarifying agreement between the parties that plaintiff's occupancy of a *"substantially"* completed service station and improvements as of the twenty-sixth day of October, 1956, with

> "payment of rents . . . determined from the 26th day of October, 1956"

was *not* plaintiff's

> " . . . acceptance of the [service] station in accordance with the terms of . . . [the] lease";

such "acceptance" would be forthcoming only at a later time as

> " . . . evidenced by the written approval of [Sun Oil] Company's Regional Engineer."[2]

It was manifestly for this reason that (1) plaintiff refrained on October 26, 1956 from approving payment of the amount of $3,979.06 claimed by Requisition # 4 since the basis of Requisition # 4 was that the work had already been " . . . completed . . . 100%" and (2) the approval for payment of Requisition # 4 was forthcoming approximately one month after October 26, 1956 and was given by the plaintiff's Regional Engineer in a letter, dated November 20, 1956, enclosing Requisition # 4 and describing it as

> "request for payment for 100% completion of the service station improvements . . . less 15% retained."

We conclude, therefore, in light of the agreement of the parties of October 26, 1956 and two subsequent letters from plaintiff's Regional Engineer—of which the first, dated November 20, 1956, approved payment of the total balance due for 100% completion of the work, less 15% retained ($3,979.07), and the second, dated December 5, 1956, approved payment of the 15% retained ($2,808.75)—that the written acceptance of plaintiff had been forthcoming, at the earliest, on November 20, 1956 when the Regional Engineer had approved payment of Requisition # 4.[3]

■ Accordingly, the expiration date of the lease was, at the earliest, fifteen years from November 20, 1956—to-wit, November 19, 1971; and plaintiff's written notice of the exercise of its option to purchase, even if assumed to have been "given" as of the date it was received by defendant, July 29, 1971 (rather than the date it was mailed, July 27, 1971), was given more than ninety (90) days prior to November 19, 1971. It was thus a validly effective exercise of the plaintiff's option to pur-

---

2. The stipulation of facts contains a letter written under date of January 20, 1971 in which the "Land Representative" of plaintiff, exploring the possibility of renewed negotiations for a "continued lease" made the statement that the currently effective lease "will expire on October 25, 1971."

By the stipulation of the parties this letter comes to our attention on the explicit condition that it is to be evidence only as we find it to be "material, relevant and probative."

Since we hold the supplemental clarifying agreement of October 26, 1956 to be clear and unambiguous as an objective manifestation of the intent of the parties as it existed at that time, we treat as evidentially inadmissible a letter written approximately 14½ years later.

Even were there ambiguity in the language used in the agreement of October 26, 1956, we are not inclined, in any event, to assign significant probative weight to the conclusion of a "Land Representative" reached 14½ years after the fact—especially since the authority of a "Land Representative" to reach, and assert, an opinion on the legal problems involved in determining the expiration date of the lease here involved, is, prima facie, highly questionable and nothing appears in the stipulations to establish such authority.

3. This approach renders immaterial whether, as plaintiff has argued, the date of acceptance was actually as late as December 5, 1956 when the Regional Engineer of plaintiff gave written approval of the payment of the 15% balance retained.

chase the leased premises, improvements and equipment.

The decision of the presiding Justice was correct.

The entry is:

Appeal denied.

WEBBER, J., did not sit.

All Justices concurring.