T–M OIL CO., INC., et al.

v.

Annie E. PASQUALE et al.

Supreme Judicial Court of Maine.

June 28, 1978.

Platz & Thompson, P.A. by Pasquale F. Maiorino (orally), Lewiston, for plaintiffs.

Orestis, Garcia & Young, P.A. by Peter M. Garcia (orally), Lewiston, for intervenor.

Skelton, Taintor & Abbott, P.A. by Bryan M. Dench (orally), John B. Cole, Lewiston, for Annie Pasquale.

Before McKUSICK, C. J., and POMEROY, WERNICK, ARCHIBALD, DELAHANTY and NICHOLS, JJ.

McKUSICK, Chief Justice.

In May 1977 plaintiff T–M Oil Co., Inc. (T–M Oil) commenced this action in Superior Court (Androscoggin County) seeking a declaratory judgment against defendant Annie E. Pasquale adjudicating their relative rights as lessee and lessor, respectively, under a certain "land lease." T–M Oil also sought a temporary restraining order to enjoin Mrs. Pasquale from interfering with plaintiff's rights to the leased premises by leasing to a third party. The temporary restraining order was granted,[1] and subsequently Fortunato's, Inc., the third party interested in leasing the premises, was permitted to intervene as a party defendant. By agreement of the parties, the declaratory judgment action was tried to a referee. See Rule 53(b), M.R.Civ.P. The Superior Court, over the objections of all parties,[2] entered judgment adopting in their entirety the referee's findings that plaintiff T–M Oil and defendant Mrs. Pasquale "are entitled and obligated to execute a lease on the terms and conditions proffered by defendant [Fortunato's, Inc.]" and "that intervenor Fortunato's is without right or valid claim in and to the leased premises."[3] Fortunato's filed the first notice of appeal from that judgment, followed by timely notices of cross-appeal by both T–M Oil[4] and Mrs.

1. By order dated May 23, 1977, the Superior Court (1) enjoined Mrs. Pasquale from interfering in any way with T–M Oil's rights to the demised premises until the declaratory judgment action had been heard and determined; (2) tolled for ten days after judgment the period of time in which T–M Oil could offer to lease the premises on the same terms offered by the third party, Fortunato's, Inc.; and (3) ordered T–M Oil to place in escrow pending judgment the sum of $200 per month, "which represents the difference between the present rent as paid by the plaintiff and the alleged bona fide offer of a third party."

2. The parties in their agreement of reference reserved the right to object to the referee's report. The parties lodged objections with the court below raising issues identical to those now presented on appeal.

3. Fortunato's was allowed to intervene with the consent of the parties. The sufficiency of its interest for purposes of intervention is not disputed.

4. After these appeals had been taken, the Lido Company of New England, Inc., entered into an agreement of merger with plaintiff T–M Oil. All parties agreed to the addition of the Lido Company as a party plaintiff, to be bound in all respects as T–M Oil by the final judgment in this action.

Pasquale.[5]

We deny the appeal and the cross-appeals.

From the evidence considered by the referee the following somewhat complicated, albeit undisputed, facts appear. In 1967 the Sun Oil Company (Sun) entered into a written lease of a parcel of land at Main Street and Montello Street Extension in Lewiston owned by Anthony and Annie E. Pasquale.[6] The initial term of the lease was to run for fifteen years from the date Sun finished certain improvements to the property, including the erection of a gasoline service station. The lease was thereafter automatically renewed for two five-year terms unless Sun gave notice to the contrary. Rent was set at $200 per month for the first fifteen-year term, increasing to $215 per month during the first five-year renewal period and $230 per month during the second renewal period.

Sometime in 1969 the improvements were completed, and in 1973 Sun, which had been granted the right to sublet the premises or assign the lease, sublet the station to John P. Fortunato and his wife, the sole owners of Fortunato's Inc., the intervenor in this proceeding. The Fortunatos operated the station under annually renewed subleases from Sun, the last of which expired June 1, 1977. Prior to that date, namely, on March 1, 1977, Sun assigned all its right, title and interest in the underlying lease to the plaintiff, T–M Oil.

Sometime in the spring of 1977 Fortunato's, Inc. commenced negotiations with the defendant, Mrs. Pasquale, for a new direct lease of the subject premises to commence on June 1, 1977, upon expiration of the Fortunatos' existing sublease from Sun.[7] As authority for entering into a new lease running directly to Fortunato's, Inc. from Mrs. Pasquale, and at the same time for terminating the existing lease held by T–M

Oil, Mrs. Pasquale and Fortunato's, Inc. relied upon paragraph 7(e) of the original Pasquale-Sun lease. That provision, the proper interpretation of which sparked the present litigation, reads as follows:

"If at any time during the term of this lease or any extension or renewal thereof, the Lessor shall receive a bona fide offer to lease the demised premises, or other property of the Lessor of which the demised premises are a part, for any term including a term to begin subsequent to the present demised term or any extension or renewal thereof, and Lessor desires to accept such offer, the Lessor shall submit to Company a photostatic copy of such offer and the Company shall have thirty (30) days following receipt thereof in which to elect to lease said premises upon the said terms and conditions contained in such offer."

In due course Fortunato's, Inc. made an offer to Mrs. Pasquale to lease the "demised premises" at a rent of $400 per month for an initial term of five years commencing June 1, 1977, followed by two successive automatic renewal periods of five years apiece at accelerated rents. On April 26, 1977, Mrs. Pasquale, in keeping with her reading of paragraph 7(e), transmitted to T–M Oil a photostatic copy of the proposed lease offered to her by Fortunato's, along with a letter indicating her desire to accept the offer. Subsequent communications between the parties, insofar as material to the issues on appeal, are discussed later in this opinion.

### I. Meaning of Paragraph 7(e)

■ The focal point of the parties' disagreement is that language in paragraph 7(e) of the Pasquale-Sun lease which dictates certain consequences if Mrs. Pasquale, the lessor, "at any time during the term or any renewal or extension thereof," wishes

---

5. The positions taken in this litigation by Mrs. Pasquale and Fortunato's are substantially identical.

6. Annie E. Pasquale at present is sole owner of the leased premises, having succeeded to the interests of her husband, now deceased.

7. In spring 1977 approximately seven years remained of the original fifteen-year term of the Pasquale-Sun lease.

to accept a bona fide offer from a third party to lease the premises therein demised "*for any term* including a term to begin subsequent to the present demised term or any extension or renewal thereof." (Emphasis added) Fortunato's and Mrs. Pasquale insist that the emphasized phrase "for any term" be given its literal meaning, with the result that Mrs. Pasquale may, if T–M Oil does not elect to lease on the same terms within thirty days of notice, make the proposed lease with Fortunato's to commence immediately, notwithstanding the fact that the original lease term has not expired. The referee found that indeed paragraph 7(e) does have the meaning placed upon it by Fortunato's, the lessee hopeful, and by Mrs. Pasquale, the lessor. On this record we cannot say that the referee erred in that interpretation of the disputed lease provision.

■ Contract language that is unambiguous must be given its plain meaning, and the question of that meaning is purely one of law. *E. g., Lewiston Fire Fighters Ass'n, Local 785 v. City of Lewiston,* Me., 354 A.2d 154 (1976). However, when the contract language is ambiguous and that ambiguity does not disappear when examined in the context of the other provisions in the instrument, *see, e. g., Sun Oil Co. v. Franklin Co.,* Me., 311 A.2d 269 (1973), it is proper for the factfinder to entertain extrinsic evidence casting light upon the intention of the parties with respect to the meaning of the unclear language. *Cf. Fitzgerald v. Baxter State Park Authority,* Me., 385 A.2d 189, 197–99 (1978).

In the Pasquale-Sun lease, we cannot say that the disputed paragraph 7(e) is completely free of ambiguity. The phrase "for any term" is immediately followed by the language "*including a term* to begin subsequent to the present demised term or any extension or renewal thereof." (Emphasis added) That language makes the initial "for any term" phrase open to at least two plausible interpretations. On the one hand, the phrase beginning with "including a term" can be regarded as merely illustrative of the timing of those leasehold estates which may be the subject of a "bona fide offer" to lease. According to that interpretation, the phrase "for any term" would be given the broadest possible meaning and would be only illustrated, and not *limited,* by the phrase that follows it. On the other hand, however, the word "including" can be read to mean "which includes," an interpretation to some degree supported by the absence of a comma between "for any term" and "including." If read in the latter sense, the "including" phrase would *limit* the term for which a supervening lease offer could be entertained to only those terms that in length extend *beyond* the termination date of the original lease's term, plus any extension or renewals thereof.[8]

Although we have scrutinized the remaining terms of the lease for guidance in interpreting paragraph 7(e), that inquiry has not been of material assistance. True, we can infer from the lease as an entirety that Sun made a substantial investment when it leased the Pasquales' unimproved property and constructed the service station on it. That fact to some extent militates favorably toward plaintiff's contention that Sun would have accepted a provision permitting the divestment of its leasehold at any time only on the condition that the new lease extend in length beyond the maximum remaining term of Sun's leasehold. By contrast, however, the somewhat modest rent set in the original lease supports a construction of paragraph 7(e) as a type of "competitive optional acceleration clause" empowering the lessor at any time during the existing term to escalate the rent upon receipt of a bona fide offer "for any term . .", which latter phrase, to implement fully the acceleration scheme, must be construed in

---

8. If the latter were the correct interpretation of paragraph 7(e), the offer made by Fortunato's would not qualify as a bona fide offer that would trigger the consequences of that paragraph. The Pasquale-Sun lease could, with renewal, run for a total of 25 years, with approximately 17 years remaining at the time of the Fortunato's offer in the spring of 1977. However, the proposed Pasquale-Fortunato's lease, slated to commence June 1, 1977, would at most run for 15 years.

the way contended for by Fortunato's and Mrs. Pasquale.[9]

■ In short, the inherent ambiguity in paragraph 7(e) cannot be resolved from the four corners of the lease itself. Although extrinsic evidence would clearly have been admissible on the question of the parties' intent, none saw fit to offer any such evidence. Lacking any guidance that such evidence might have provided, we see no reason in the present case not to consider our decision controlled by the familiar principle of construction requiring the wording of a written instrument, in the event of ambiguity, to be construed against the drafter of the disputed provision. *See, e. g., Lincoln Pulp & Paper Co., Inc. v. Dravo Corp.,* 436 F.Supp. 262, 270–71 (D.Me.1977); *Hills v. Gardiner Savings Institution,* Me., 309 A.2d 877, 881 (1973). As we have heretofore made clear:

> "The rule that an ambiguous contract will be construed more strongly against him who uses the words concerning which doubt arises is more than an arbitrary rule. Its purpose is to give effect to the intention of the parties. To the maker of an instrument is available language with which to adequately set forth the terms thereof. It is presumed that he will not leave undeclared that which he would claim as his right under the agreement . . . ." *Monk v. Morton,* 139 Me. 291, 295, 30 A.2d 17, 19 (1943).

The lease in the present case is a standard printed form obviously drafted by Sun. The disputed paragraph 7(e) reads exactly as printed on the form, no special deletions or additions having been made. Sun, and its successor in interest T–M Oil, are therefore bound to that construction more favorable to the lessor, Mrs. Pasquale. Thus, in the absence of any extrinsic evidence whatsoever to the contrary, the referee properly ruled that paragraph 7(e) permits Mrs. Pasquale to entertain the bona fide offer of Fortunato's, Inc., to lease the demised premises for a term of, at most, fifteen years' duration commencing June 1, 1977.

## II. *T–M Oil's Exercise of Option*

Upon receipt of Fortunato's, Inc.'s offer to lease, Mrs. Pasquale was required by paragraph 7(e) of the original Pasquale-Sun lease to submit a photostatic copy of the proposed Fortunato's lease to T–M Oil, successor to Sun's interest as the original lessee. After receiving that copy, T–M Oil had thirty days "in which to elect to lease said premises upon the said terms and conditions contained in such offer."

The parties to this action do not dispute that Mrs. Pasquale gave T–M Oil the requisite notice of the proffered Fortunato's lease on April 26, 1977, and that T–M Oil responded by letter of May 2. What is disputed is the effectiveness of T–M Oil's May 2 letter to exercise its option within the prescribed thirty days. The referee found that Mrs. Pasquale's offer "was seasonably and effectively accepted by T–M and both parties are now obligated to execute a lease incorporating all the terms and conditions of the lease proffered by Fortunato's." We agree.

In the opening paragraphs of its May 2 letter, T–M Oil asserted its legal position respecting the proper construction of paragraph 7(e), namely, that it did not grant the lessor a right to terminate the existing lease, and further stated that "said T–M Oil Co., Inc. will continue to occupy the premises upon the same terms and conditions of the assigned lease." In addition to those declarations, however, the letter closed with the following paragraph:

> "Should you decide to litigate this issue and should this issue be decided in your favor, please consider this an offer to lease in accordance with our right of first refusal on the same rental terms as those set forth by Mr. John P. Fortunato, Jr., to wit: Four Thousand Eight Hundred Dol-

---

9. In his report the referee observed, in finding a rational basis for the latter interpretation of paragraph 7(e), that: "The lease was executed in 1967 when the impact of inflation was being felt in the business world. Sun may well have concluded that it would be difficult to persuade the owners of real estate to tie themselves to a long term lease unless some provision was made for rent acceleration based on supply and demand in a competitive market."

lars ($4,800.00) per annum for the initial five (5) year term and for the exercise of said renewal at the rate of Five Thousand Seven Hundred Dollars ($5,700.00) per annum for the first five (5) year period and at the rate of Six Thousand Six Hundred Dollars ($6,600.00) per annum for the second five (5) year period." Clearly, T–M Oil intended its May 2 letter to operate as an election to lease on the same terms proffered by Fortunato's,[10] but only in the event that litigation proved the lessor, Mrs. Pasquale, entitled under paragraph 7(e) to terminate T–M Oil's existing lease.

■ Significantly, within two weeks of sending its May 2 letter, T–M Oil itself initiated the present action seeking an adjudication of the meaning of paragraph 7(e). By its own actions, it therefore eliminated the burden of commencing litigation which its letter appeared to impose upon Mrs. Pasquale as a condition of its election. At that point, the sole remaining condition on T–M Oil's election was a judicial determination favorable to Mrs. Pasquale. As of the date it commenced the present action, T–M Oil evinced its intent to exercise its election to lease on the same terms offered the lessor by Fortunato's, subject only to the outcome of the present litigation. Its position was sufficiently unequivocal to constitute a valid exercise of the option. *See, e. g., Russell v. Hill,* 237 Ark. 712, 375 S.W.2d 661 (1964); *Milner v. Dudrey,* 77 Nev. 256, 362 P.2d 439 (1961); *Humble Oil & Refining Co. v. Westside Invest. Corp.,* 428 S.W.2d 92 (Tex.1968). The referee correctly determined that T–M Oil and Mrs. Pasquale had formed a contract to make a lease on the same terms and conditions offered by Fortunato's, and, in keeping with our holding in the first part of this opinion, those parties are now bound to fulfill their contractual obligations.[11]

### III. *Temporary Restraining Order*

■ The final contention of Fortunato's, Inc. on appeal merits but brief consideration. It urges that the Superior Court's temporary restraining order barring Mrs. Pasquale from leasing to Fortunato's was not properly entered in its absence, since its interest as potential lessee made it an indispensable party to the proceedings at that stage in the litigation. See Rule 19(a), M.R. Civ.P. The motion for the temporary restraining order clearly concerned only the immediate parties to the declaratory judgment action, namely, the plaintiff T–M Oil, and Mrs. Pasquale, the lessor, as defendant. T–M Oil sought by its motion for a temporary restraining order solely to maintain the status quo between itself and Mrs. Pasquale. The Superior Court, empowered to grant such equitable relief, was capable of granting the complete relief requested by issuing an order running only against Mrs. Pasquale and restraining her from taking any action to make a new lease of the premises to a third party pending disposition of the declaratory judgment action. Fortunato's, against whom the order does not even purport to run, was in no sense indispensable to adjudication of that preliminary motion. In any event, Fortunato's soon became a party defendant to the suit, through its own voluntary intervention, and

10. The specific recitation of the rent provisions, appearing after the phrase "to wit" in T–M Oil's letter, does not detract from the comprehensiveness of the writer's intent to offer to lease "on the same rental terms as those set forth by Mr. John P. Fortunato, Jr."

11. In any event, since the temporary restraining order holds the option period open, see n. 1 above, T–M Oil would not be precluded now from exercising its option even if the conditions which it imposed in its May 2 letter made the letter a counteroffer or even an outright rejection. T–M Oil's assignor Sun Oil gave valuable consideration for paragraph 7(e)'s option to lease, and the lessor, Mrs. Pasquale, was thus contractually bound to hold the option open for the duration of the prescribed thirty-day period. The lessor could only have been discharged from that contractual obligation if she had given new consideration for T–M Oil's relinquishment of its right, or had otherwise changed her position to her detriment in reliance upon T–M Oil's representations. *See Restatement (Second) of Contracts* § 343 (Tent. Draft No. 13, 1978); § 35A (Tent. Drafts Nos. 1–7, rev. and ed. 1973). No facts in the present case would support a finding that Mrs. Pasquale was so discharged.

it cannot now be heard to complain that it is as a practical matter bound to the adverse declaratory judgment to the same extent as Mrs. Pasquale.

The entry must be:

Appeal and cross-appeals denied.

Judgment affirmed.

GODFREY, J., did not sit.