USCA1 Opinion

 

 United States Court of Appeals For the First CircuitNo. 99-1616 LILIA TWOMBLY, F/K/A LILIA MAJERCZYK, Plaintiff, Appellant, v. AIG LIFE INSURANCE COMPANY, Defendant, Appellee. APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MAINE [Hon. Morton A. Brody, U.S. District Judge] Before Selya, Circuit Judge, Coffin, Senior Circuit Judge, and Boudin, Circuit Judge.     David M. Lipman with whom Karen E. Lipman was on brief forappellant. Barbara A. Cardone with whom John W. McCarthy was on brief forappellee.December 14, 1999   COFFIN, Senior Circuit Judge. Appellant Lilia Twombly claimsthat her employer's insurer, appellee AIG Life Insurance Company,wrongly denied her coverage for injuries she suffered in a seriouscar accident that occurred while she was driving home from a work-related meeting. The district court concluded that the insurancepolicy did not cover such travel, and it therefore granted summaryjudgment for the insurer. Because we believe that the contract issusceptible to more than one reasonable interpretation, we vacatethe summary judgment for the insurer and remand to the districtcourt to allow the insurer to present extrinsic evidence sheddinglight on the parties' intentions. If none is available,longstanding principles of Maine law governing the construction ofinsurance policies require that judgment be granted for Twombly. I. Factual Background At the time of her accident in June 1995, Twombly held a fieldservice position with Americorps National Service Program. Although she worked out of the program's Bangor, Maine, office, sheregularly traveled to field sites as part of her job. One of herresponsibilities was to educate migrant farm workers about publichealth issues, including the safe handling of pesticides. On June16, 1995, she traveled south from her home in Lincoln to her officein Bangor to do administrative work before heading back northbeyond Lincoln to a meeting in Houlton to plan an upcoming trainingsession on pesticide use. After the meeting, while driving southtoward her home in Lincoln, along the same route that also wouldhave taken her back to the office in Bangor, Twombly was involvedin a one-car collision that left her severely injured. As an Americorps employee, Twombly was insured under anoccupational accident policy issued by AIG. The policy and theMaster Application sheet contained three statements relating tocoverage for travel that are pertinent to our discussion. Two ofthe statements were virtually identical "Description of Activity"provisions, one found in the application and one in the policyitself. Because the differences between them are irrelevant to theissues before us, we reproduce for convenience only the applicationlanguage, section 3 of the document, which was as follows: Occupational Only: 24 Hr. coverage while on Business of a sponsoring member. Excluding commutation to and from.On the application, this statement was not part of the contractboilerplate, but was typed in to describe the particular coveragebeing purchased. The third relevant statement appears on the same page of theMaster Application. This "Eligibility and Classification"provision, section 4b, has two pre-printed statements of possiblecoverage, each with a box beside it. One box was checked and onewas not, and beside the unchecked box was the notation "N/A." Theprovision thus appeared as follows: Eligibility and Classification of Insured (Please Check): All members of the Policyholder as described above will be covered for accidental injury sustained while they are: Participating in any scheduled, sponsored and supervised activity. Direct travel to or from such activity. N/AThe policy does not define the terms "activity," "travel" or"commutation." Twombly contends that she was injured while participating ina covered activity within the meaning of the "Eligibility andClassification" provision. She maintains that the "activity" inwhich she was participating embraced her travel to Houlton from heroffice and would have included the return trip south from Houltonto Bangor had her workday not ended, causing her to travel southonly as far as her home in Lincoln. That travel was not excludedas "commutation to and from" under the "Description of Activity"provision, she maintains, because it did not constitute commutingwithin the generally understood meaning of that concept that is,repeated travel along the same route between home and one's regularwork location and that common understanding of commutation mustapply because the term is not otherwise defined in the policy. Twombly further contends that the unchecked box in section 4b,the "Eligibility and Classification" provision, does not indicaterejection of coverage for all travel "to or from" work activities,but considered together with the "N/A" notation (i.e., "notapplicable") beside it, indicates that the subject is coveredelsewhere in the policy. The "elsewhere," in her view, is theexclusion for "commutation to and from" business activities writtenin under "Description of Activity." Thus, her view is that the"N/A" notation beside the second box in section 4b meant that thecustomized "Description of Activity" entry provided the applicablestandard for travel coverage. And she construes that provision tomean that travel other than that usually considered commutation iscovered. The district court, however, concluded that the two provisionswhen read together must be understood to exclude coverage not onlyfor what is typically considered commuting but also for any travelbetween an employee's home and her work assignment, regardless ofthe location of the work. The court reasonably took section 4b atface value, observing that "the empty box and the phrase `N/A'positioned next to . . . [the travel] language indicate that suchcircumstances are not covered activities under this Policy." Because the accident occurred when Twombly was traveling home atthe end of her workday, the court ruled as a matter of law that herinjuries were not covered and granted summary judgment for AIG. On appeal, Twombly re-asserts her interpretation of thecontract and contends that the policy is sufficiently ambiguousthat either its language should be interpreted as a matter of lawin her favor or, in the alternative, the dispute should be given toa jury to resolve. As we explain below, we find the contract to beambiguous, and, under Maine law governing the interpretation ofinsurance polices, Twombly was entitled to have the ambiguityconstrued in her favor, unless the insurer can prove throughextrinsic evidence that the parties intended the policy to excludethe sort of business travel in which Twombly was engaged at thetime of her accident. Consequently, the case must be remanded tothe district court for further proceedings. II. Discussion Maine law provides a series of well established guideposts forthe interpretation of an insurance policy. Like all contracts, aninsurance contract is to be construed in accordance with theintention of the parties. See Maine Drilling & Blasting, Inc. v.Insurance Co. of N.A., 665 A.2d 671, 673 (Me. 1995); BaybuttConstr. Corp. v. Commercial Union Ins. Co., 455 A.2d 914, 921 (Me.1983) (overruled on other grounds). Questions concerning themeaning of language in an insurance policy, including whether it isambiguous, are to be resolved as a matter of law by the court. SeeApgar v. Commercial Union Ins. Co., 683 A.2d 497, 498 (Me. 1996);Banker's Life Ins. Co. of Nebraska v. Eaton, 430 A.2d 833, 834 (Me.1981). In seeking to ascertain the intention of the parties, thecourt must examine the whole instrument. See Apgar, 683 A.2d at498; Baybutt, 455 A.2d at 921. If an ambiguity in the language ofa contract does not disappear when it is examined in the context ofthe other provisions of the document, extrinsic evidence may beconsidered to cast light on the parties' intent. See Apgar, 683A.2d at 501; T-M Oil Co. v. Pasquale, 388 A.2d 82, 85 (Me. 1978).Any ambiguities that persist are to be resolved against the insurerand in favor of coverage. See, e.g., Geyerhahn v. United StatesFidelity and Guar. Co., 724 A.2d 1258, 1261 (Me. 1999); CambridgeMut. Fire Ins. Co. v. Vallee, 687 A.2d 956, 957 (Me. 1996). Applying these principles to the case before us, the thresholdquestion of law is whether the language of the Americorps policy isambiguous. We conclude that it is. The language of a contract isambiguous "if it is reasonably susceptible of differentinterpretations." Cambridge Mutual, 687 A.2d at 957; see alsoPeerless Ins. Co. v. Brennon, 564 A.2d 383, 384 (Me. 1989). Although we acknowledge the logic in the insurer's position,accepted by the district court, that the policy provisions recitedabove had the effect of excluding coverage for any travel betweenan employee's workplace and home, we find that it is not the onlyplausible construction of the policy. The district court's viewgave heavy weight to the fact that coverage was checked off for"any scheduled, sponsored and supervised activity," but that thebox beside the phrase "direct travel to or from such activity" wasunchecked. The court reasonably construed the absence of a checkmark as an intention not to cover work-related travel. Twombly's interpretation, however, is similarly supportable. She begins with the assertion that section 3, which excludescoverage for "commutation to and from" business activities, doesnot affect coverage for her injuries because the accident did notoccur on her commuting route between Lincoln and Bangor. Anyexclusion from coverage thus must come from section 4b, wherecoverage is checked off for "any scheduled, sponsored andsupervised activity" of her employer but the "travel to or from"box is unchecked. Twombly argues that the "activity" she undertookon the day of the accident planning the out-of-office trainingsession included her travel to and from the meeting in Houlton. In her view, the unchecked box next to "direct travel to or fromsuch activity" does not eliminate coverage for travel incircumstances in which the travel is part of the actual workactivity. She also goes further to argue that the "N/A" notationbeside the travel provision indicates that that provision has norelevance at all to the coverage provided under the policy. Shecontends that the provision is, as the term indicates,"inapplicable" to this policy. The applicable provision on travelis section 3, which she claims excludes only "traditional"commuting and thus leaves all other work-related travel within thescope of the policy. Both aspects of her interpretation strike us as eminentlyreasonable. It is undisputed that Twombly's responsibilities withAmericorps included regular travel to field sites for the purposeof educating migrant farm workers about the proper handling ofpesticides. We think it quite likely that Americorps intended toacquire an occupational accident policy that covered travel risksto employees whose work included such regular travel to out-of-office locations. Indeed, given the probable expanse of her workarea, Twombly may have spent substantial portions of some workdays traveling. We are persuaded that a reasonable persondescribing Twombly's work "activities" for the purpose of the firstpart of section 4b would be likely to include as part of her jobher travel to various locations for farm worker training. Drivingregularly occurred as part of her work day, not only as commutationat its beginning and end. In addition, rather than negating coverage for workday travel,the "N/A" notation beside the unchecked travel provision in section4b reinforces the likelihood that Americorps' failure to check theprovision was not intended to eliminate travel coverage thatotherwise was provided through the broadly written "Description ofActivity" in section 3. The "N/A" notation is used in at least oneother place in the policy apparently to indicate that boilerplatelanguage is inapplicable, rather than to exclude certaincircumstances from the scope of coverage. In particular, insection 3, the standard form of the contract appears to contemplatethe possibility of a policy that was issued to cover either aparticular trip or a particular activity. The relevant portion appears as follows: Trip Activity  Destination:_____________N/A____ Description of:___N/A____________ Mode of Transportation:__N/A____ Location:_________N/A____________ Date of Coverage:________N/A____ Date of Coverage:_N/A____________The message of the "N/A" notation as used in this sectionreasonably is understood to be that "this provision does not applyto this contract." It is unsurprising that these two groups ofdetails, although irrelevant to the sort of comprehensiveoccupational coverage obtained by Americorps, appear on theapplication, because the Master Application presumably is used tosecure coverage in a variety of settings. It is logical that notevery provision of boilerplate language would be applicable toevery contract, and it is within common experience to encounter the"N/A" label on such standardized forms.  A fair reading of section 4b can lead to the conclusion thatthe "N/A" notation next to the provision relating to "travel to orfrom" a work activity has the same meaning and serves a relatedpurpose as in section 3; in this instance, the notation reasonablycan be understood to mean that the provision so designated "doesnot apply to this contract" because such travel is covered pursuantto section 3, unless it constitutes typical commuting. Indeed,when the occupational coverage obtained is comprehensive, and whenthe "activity" of the insured employees routinely includes workdaytravel, it arguably would be unreasonable to reduce coverage thatis explicitly defined quite broadly as in the Description ofActivity provision here based on a provision that is labeled as"inapplicable" to the contract. At the least, the limitedexclusion for "commutation" in section 3 and the arguable exclusionof other work-related travel in section 4b creates an ambiguity. We note one additional factor in support of appellant. Thelanguage in the policy excluding medical expenses arising from"[a]n accident which occurs while the Insured Person is travelingto and from work," the fourth provision referring to travelcoverage, see note 1 supra, reinforces the notion that this policydistinguishes between regular commuting and other types of travel. The use of the conjunctive in "travel to and from work" seems todesignate the concept of commutation, as does the use of thegeneral word "work" as the destination. In section 4b, however,not only is the reference phrased in the disjunctive "travel toor from" but also the destination is more particularized to agiven work "activity." This comparison, although somewhatbelaboring the point, demonstrates yet again that the type oftravel normally understood to be commuting is explicitly excludedfrom coverage, while there is no similarly unambiguous indicationthat the parties intended to exclude other types of travel from thecoverage that facially is provided by the broad "Description ofActivity" statement. Having concluded that the policy is ambiguous, our attentionnext must focus on any extrinsic evidence offered to provideinsight into the parties' intentions. We have been given none.Indeed, the insurer, which bears the burden of any unresolvedambiguity, see supra at 6-7, emphatically asserts in the face ofTwombly's request for fact finding that there are no facts indispute and that the court should resolve this case based on thecontract alone. Although this position may signal an actualabsence of any extrinsic evidence, it may simply reflect theinsurer's view that the contract itself is so clear that no furtheraids to its interpretation are necessary. If the former, thepolicy must be construed in favor of the insured and coverage. SeeT-M Oil Co., 388 A.2d at 86 (although extrinsic evidence would havebeen admissible, none was offered, and court therefore resolvedambiguity in favor of insured). Our foremost obligation, however, is to give effect to theintentions of the parties. "The rule of construction that a policyshould be construed more strongly in favor of coverage `is a ruleof last resort which must not be permitted to frustrate theintention the parties have expressed, if that can otherwise beascertained.'" Apgar, 683 A.2d at 500-01 (internal citationsomitted). We therefore vacate the summary judgment for AIG andremand to the district court to permit the insurer to shed anyfurther light on that issue that it can through evidence on thepreparation of the policy, its structure, discussions that may haveoccurred with Americorps, or any other relevant aspect of thecontract formation. If no such evidence is presented, judgmentmust be entered for Twombly because, as we have indicated, thepolicy reasonably can be construed to provide coverage for thework-related, non-commuting travel in which she was engaged at thetime of her accident. Vacated and remanded for further proceedings consistent withthis opinion.