FIRST NATIONAL BANK OF GUILFORD *vs.* EDWARD WARE.

Piscataquis.    Opinion July 25, 1901.

*Bankruptcy. Insolvency. Assignment. Composition. Discharge. R. S., c. 82, § 45. Stat. 1897, c. 325, § 16.*

1. The present United States Bankruptcy Act became operative July 1, 1898, and upon that day deprived the courts of insolvency in this State of all power and jurisdiction to administer insolvent estates and grant discharges from debts, except in those cases in which insolvency proceedings had been begun before that day.

2. Insolvency proceedings, under the insolvent law of the State, are not begun until the power and jurisdiction of the court are invoked by filing with the court the papers drafted for that purpose. Hence, where no papers were filed

in the court of insolvency until July 8th, 1898, that court has no power or jurisdiction in the matter, and can give no discharge, though the debtor had made an assignment for the benefit of creditors on May 25th, previous.

3. Where a debtor made an assignment for the benefit of creditors, but afterward abandoned proceedings under it and proposed instead thereof a composition agreement by which his creditors were to accept a fixed percentage of their debts in full discharge, creditors assenting to such composition agreement do not thereby become parties to the prior assignment, and their claims are not discharged until the percentage is paid according to the terms of the agreement, even though the interest upon their claims is reckoned up to the date of the first assignment.

4. The promise of a creditor to accept a percentage of his admitted claim in full discharge is not binding upon him unless supported by a new consideration,—some new advantage to the creditor, or some new disadvantage to the debtor.

5. When a debtor has proposed to his creditors that they accept in full discharge of their admitted claims a percentage in two installments, the mere acceptance by a creditor of the first installment with notice that it is paid under that proposition does not bind the creditor to discharge his claim upon payment of the last installment. Revised Statutes, ch. 82, § 45, applies only to cases where the final payment is received in full present discharge.

6. To make a composition agreement not under seal signed by several creditors binding upon such creditors when no other consideration is shown, it must appear that the creditors joined together in such agreement so that the promise of one was the inducement, or consideration, for the promise of the others.

7. After such composition agreement has been concluded between a debtor and several of his creditors, a subsequent payment by him thereunder to another creditor, who had never signed nor agreed to sign the agreement and whose claim was unknown to the signing creditors, does not make him a party to the agreement between the creditors.

On report.    Judgment for plaintiff.

Assumpsit on two promissory notes to which the defendant, as maker, pleaded a composition agreement under insolvency proceedings as a bar.

The case appears in the opinion.

*H. Hudson,* for plaintiff.

*C. F. Johnson,* for defendant.

The plaintiff cannot recover because it assented to the composition agreement by accepting the first payment under it.

The recent decision of this court in *Anderson* v. *Standard Granite Company,* 92 Maine, 429, is directly in point. "If an offer of money is made to anyone upon certain terms and conditions and the party to whom it is offered takes the money, though without words of assent, the acceptance is an assent de facto and he is bound by it. The acceptance of the money involves the acceptance of the condition. Under such circumstances the assent of the creditor to the terms proposed by the debtor will be implied and no words of protest even can affect this result."

In *Fuller* v. *Kemp,* 138 N. Y., 231, (20 L. R. A. 785,) the court held that accepting a check for less than the amount claimed on an unliquidated bill for a physician's services constituted an accord and satisfaction, where the check was sent with the express statement that it was in full satisfaction.

In this case the claim was an unliquidated one, but by our statute c. 82, § 45, it makes no difference whether the claim is liquidated or unliquidated which has been settled by the acceptance of a less sum than its face, and therefore an agreement to settle a liquidated claim for a sum less than its face is equally as binding as an agreement to settle an unliquidated one.

Even in those states where the rigor of the old common law rule has not been relaxed by statutory enactments and it is held that there is no consideration for the promise of a creditor to receive a sum less than the face of his claim in full settlement thereof provided the claim is a liquidated one, an exception is made in case of composition papers and also where payment is made by a third party.

In *Kitchin* v. *Hawkins,* 12 Jur. N. S. 928, the facts were very similar to those in this case. There a debtor executed a deed of composition securing to all his creditors ten shillings on a pound. The plaintiffs withheld their consent to the deed. The composition under the deed was paid to the complainants, who kept the money without stating on what account it was received or without giving any acknowledgment for it. They afterwards claimed to have received it on account of their original debt. Held, that the plaintiffs were precluded from saying that they had received it on

account of the original debt and that it must be taken to have been paid as a composition under the deed.

In *Chafee* v. *Fourth National Bank of New York,* 71 Maine, p. 527, where the defendants received payment under an assignment and afterwards attacked the assignment as void, the court said: " And knowingly receiving payments or dividends thereby secured to them is conclusive evidence of assent."

In *Mellen* v. *Goldsmith,* 47 Wis. 573, (32 Am. Rep. 781,) the appellants had verbally agreed with the respondent to compromise their claims against him and sign a deed of composition for sixty cents on a dollar and in consideration and upon the condition that the other creditors would do so. The other creditors did so compromise and sign such deed. The appellants refused so to do and refused to accept such per cent, in satisfaction of their claim tendered for such purpose by the respondent, and the court there held that they could only recover the rate fixed in the agreement.

In that case it was objected that there was no satisfaction and that the agreement was entirely executory, but the court quoted approvingly Lord Ellenborough in *Bradley* v. *Gregory,* 2 Campbell, 383, where he says: " I think the agreement in the present case operates as a satisfaction ; but it is said the agreement is executory and therefore can be no bar. I think it is executed. Everything on the defendant's part was performed and, as far as depends upon him, there has been satisfaction as well as accord. It is the plaintiff's own fault that he has not enjoyed the full benefit of all that he stipulated for,—and I am of the opinion that in point of law, the action is not maintainable."

Counsel also cited: *Good* v. *Cheesman,* 2 B. & A. 328 ; *Steinman* v. *Magnus,* 11 East, 390 ; *Pierce* v. *Jones,* 28 Am. Rep. 288 ; *Perkins* v. *Lockwood,* 100 Mass. 249 ; *Eaton* v. *Lincoln,* 13 Mass. 424 ; *Farrington* v. *Hodgdon,* 119 Mass. 453 ; *Sage* v. *Valentine,* 23 Minn. 102 ; *Williams* v. *Carrington,* 1 Hilt. (N. Y.) 514 ; *Blair* v. *Wait,* 69 N. Y. 113 ; *Fellows* v. *Stevens,* 24 Wend. (N. Y.) 294 ; *Paddleford* v. *Thacher,* 48 Vermont, 574 ; *Pfleger* v. *Brown,* 28 Beav. 391 ; *Gillfillan* v. *Farrington,* 12 Ill. App. 101 ; *Way* v. *Langley,* 15 Ohio St. 392.

It is not necessary that an agreement to make a composition with a debtor be in writing. *Chemical National Bank* v. *Kohner*, 85 N. Y. 189; *Byron* v. *Mount*, 24 Beav. 642; *Cork* v. *Saunders*, 1 B. & A. 46; *May* v. *Wannemacher*, 111 Mass. 202; *Pierce* v. *O'Brien*, 129 Mass. 314; *Jones* v. *Tilton*, 139 Mass. 418.

Consideration : It is true that the defendant had made an assignment for the benefit of all of his creditors, but in order to obtain the debtor's assistance and to avail themselves of his acquaintance with his business, they were willing to enter into the composition which was made and to substitute their rights under this for the rights secured to them by an assignment. This furnished the consideration for the agreement of each of the creditors to settle his claim for less than its face value, as also the mutual promises of each of the creditors,—for each has the undertaking of the rest as a consideration for his undertaking.

The plaintiff is estopped to recover the balance of its claim in full. Equitable estoppel is now available as a defense in actions at law as well as in equity. *Tracy* v. *Roberts*, 88 Maine, 310; *Brant* v. *Virginia Coal & Iron Co.*, 93 U. S. 326.

Equitable estoppel in the modern sense arises from the conduct of the parties, using that word in its broadest meaning, as including his spoken or written words, his positive acts, and his silence or negative omission to do anything. Pomeroy's Equity, § 802.

In *Caswell* v. *Fuller*, 77 Maine, 105, the court uses the following language, "That a man should be allowed by his own speech and conduct to lead another astray and thereby take substantial benefit from the error of which he was the cause, is subversive of natural justice." This language is cited approvingly in the *American Gas and Ventilating Machine Company* v. *Wood*, 90 Maine, 516, and in an earlier case in our state, *Copeland* v. *Copeland*, 28 Maine, 525, this doctrine of equitable estoppel or estoppel in pais is fully recognized.

The payment received by the plaintiff should have been returned. The fund upon which the assignee drew his check was one created for the benefit of the creditors who had agreed to the composition with the defendant. If the defendant had succeeded in realizing

less than thirty per cent from his assets, the amount to be distributed among the creditors who had assented in good faith to the composition would have been diminished by the amount paid by the plaintiff, and it would be a gross fraud upon them and the defendant for the plaintiff to retain the payment which was made to it after the statements made by the cashier of the bank, and then to repudiate the terms of the agreement under which it was made and bring a suit to recover the balance in full of its claim.

In *Fuller* v. *Kemp*, 138 N. Y. 231, 20 L. R. A. 785, the court says that it is of no significance in this case that the remittance was by check. Both parties treated it as money and upon the receipt of this letter the plaintiff had but a single alternative presented for his action,—the prompt restoration of the money to his debtor or the complete extinction of the debt by its retention. The tender and its condition could not be dissevered. The one could not be taken and the other rejected. The acceptance of the money involved the acceptance of the condition. If the plaintiff did not wish to assent to the terms of payment, it should have returned the check. *Anderson* v. *Standard Granite Co.*, 92 Maine, 429; *Bisbee* v. *Ham*, 47 Maine, 543; *Percival* v. *Hichborn*, 56 Maine, 575; *Staples* v. *Wellington*, 62 Maine, 9; *Burrill* v. *Parsons*, 73 Maine, 286.

In a similar case, *Eaton* v. *Lincoln*, 13 Mass. 424, the court held that the person acting in a similar capacity to that in which the assignee acted in this case, was the agent of the creditor and that receipt by him would sustain a plea of accord and satisfaction. The defendant had performed fully his part of the composition agreement when he had paid the whole of the last dividend to the assignee.

SITTING: EMERY, WHITEHOUSE, SAVAGE, FOGLER, POWERS, JJ.

EMERY, J. This is an action of assumpsit on two promissory notes given by the defendant for value and discounted by the plaintiff bank for value. The defendant claims one or more

defenses to be afforded by certain transactions briefly stated as follows:—

On May 25, 1898, after giving the notes, the defendant made a common law assignment under seal for the benefit of his creditors in the usual form, with the usual provision for the immediate release of claims, to Chas. F. Johnson. Several of his creditors, including the plaintiff bank, did not, at the time at least, become parties to this assignment. Indeed, the plaintiff bank did not then know of it. The defendant afterward, on July 8, 1898, filed this assignment and also his petition in insolvency in the Insolvency Court for Kennebec county, under sec. 16, ch. 325 of Laws of 1897, additional to and amendatory of the prior insolvency laws of the State. The usual proceedings were then had until Sept. 25, 1898, when the usual composition paper was prepared in the terms following:

"September 25, 1898.

We, the undersigned, creditors of Edward Ware of Waterville, in the county of Kennebec, hereby agree to accept thirty per cent of our actual net claims against him, the amounts of which are correctly stated against our respective names, in full discharge thereof; fifteen per cent in four months after September first, 1898, and fifteen per cent in eight months after said date. .

" We have not, directly or indirectly, received any compensation or promise of future payment beyond the per cent herein named."

This composition was afterward found by the Insolvency Court to have been signed by the number and amounts of creditors required by the insolvent law, and the defendant was thereupon, November 27, 1898, granted a certificate of discharge from his debts according to the provisions of the insolvency law. The plaintiff did not sign this composition paper and at first positively refused to do so, but later its cashier gave the assignee, Mr. Johnson, some encouragement that the bank would sign it. At any rate, Mr. Johnson on December 31, 1898, sent to the bank his check for the first fifteen per cent enclosed in a letter stating that the enclosed check was for the dividend of fifteen per cent due January 1, 1899, under the composition agreement of September 25, 1898,

reciting the substance of it, and also reciting May 25, 1898, as the date of the assignment. The plaintiff bank credited the check on the notes, but made no reply to the letter. Again, on April 24, 1899, Mr. Johnson sent another check for fifteen per cent more enclosed in a letter stating that it was in full of the balance of the note according to the composition agreement of September 25, 1898. This check the plaintiff returned with word that it could not be received in full payment but only on account, as the bank had never agreed to accept thirty per cent in full.

In the meantime there was an arrangement entered into between the defendant, Mr. Johnson and some of the creditors, by which the title to the defendant's property was to be placed or remain in Mr. Johnson as security for the payment of the thirty per cent. It does not appear, however, that the plaintiff bank was any party to this arrangement or was ever informed of it.

Under the foregoing circumstances the defendant sets up defenses as follows:

I. He contends he was effectually discharged from these notes by the decree of discharge dated November 27, 1898, in the insolvency proceedings recited. But his insolvency proceedings were not begun till July 8, 1898, when his previous assignment and his petition were filed, and when the insolvency court had been deprived of all power and jurisdiction in the matter by the United States Bankruptcy Act enacted and put in force July 1, 1898. *Parmenter Mfg. Co.* v. *Hamilton*, 172 Mass. 179, and cases there cited. The defendant urges in reply that his insolvency proceedings were really begun May 25, 1898, when he made his common law assignment for the benefit of creditors and hence were saved by the clause in the U. S. Bankruptcy Act saving all proceedings begun before the passage of the Act July 1, 1898. His common law assignment, however, was no part of the insolvency proceedings, until, at least, it was filed in the insolvency court with his petition to be declared an insolvent. It gave the court no jurisdiction over him or his property or his debts. The insolvency proceedings were not begun until the power of the insolvency court was invoked.

II.   He next contends that if all the insolvency proceedings were rendered nugatory by the prior interposition of the U. S. Bankruptcy Act, his assignment for the benefit of creditors remained good.   But, to constitute that a defense, he must go further and show that the plaintiff bank became a party to that assignment.   It was an instrument under seal and it is not pretended that the plaintiff bank or any of its officers ever sealed it, signed it, or saw it.   It does not appear that they ever knew of it unless the recital in the letter of December 31, 1898, that the claims were made up to the 25th day of May, 1898, the date of his assignment, is such knowledge.   That letter, however, explicitly stated, "This payment [the first dividend of 15 per cent] is made in accordance with the terms of the composition settlement entered into between Mr. Ware and the requisite number of his creditors by which 15 per cent of all claims was to be paid within four months after September 1, 1898 and 15 per cent within eight months after said Sept. 1."

The acceptance of the check contained in that letter, thus reciting the agreement of September 25, 1898, clearly did not make the bank a party to an entirely different agreement not recited nor stated to be one in accordance with which the check was sent.

But the defendant argues that the assignment of May 25, 1898, was a part of his insolvency proceedings all through, and hence a part of the composition settlement of September 25, 1898.   To this argument there are two answers.   (1)   The supposed insolvency proceedings, as already stated, were of no force, and no other connection could be made through them than was made without them.   (2)   If the supposed insolvency proceedings had been valid, the assignment of May 25, 1898, was practically eliminated. Under § 16, ch. 325, Laws of 1897 above cited (had that law continued in force) the defendant could have obtained his discharge upon the assignment alone, could he have shown that it was executed in good faith by himself "and the required majority of his creditors;" but he abandoned that ground for discharge and sought his discharge upon a composition settlement of an entirely different nature and effect, and not tendered creditors till September 25,

1898. It was explicitly under this latter instrument that the check of December 31, 1898, was sent and accepted. The defendant did not then claim that it was under the prior and different assignment.

III. The defendant again contends that, in any event, the plaintiff bank by accepting the check of December 31, 1898, for the first fifteen per cent with the explicit notice that it was sent under the composition settlement of September 25, 1898, thereby became a party to that settlement, and hence can only recover the remaining fifteen per cent provided in that settlement. Passing the question whether by accepting the check the plaintiff bank in effect signed the composition settlement, we proceed to inquire whether the agreement therein contained, even if assented to, was upon such consideration as made the agreement binding on the plaintiff bank. We find no such consideration disclosed in the evidence, however the fact may really have been.

The composition agreement must be construed without reference to the former insolvent law as that had been repealed before the beginning of the proceedings. It was a unilateral agreement being by the creditors only. It was purely executory. The creditor did not then accept thirty per cent in full, but nakedly agreed to accept it in the future. Mr. Ware did not agree to pay it. He bound himself to nothing. He gave up nothing, at least to the knowledge of the plaintiff bank. No advantage to the creditors nor detriment to the debtor is shown.

Nor did the acceptance of the partial payment constitute such a consideration. That payment was not accepted nor tendered in full. It was explicitly tendered as part payment only. Here, again, appears no advantage to the creditor nor detriment to the debtor. It was the defendant's duty to pay the whole debt, and hence in paying part he only did part of his duty. The duty to pay the balance still remained upon him. He deprived himself of no right, and incurred no additional obligation. The plaintiff bank received nothing it was not before fully entitled to receive. It acquired no new right. It had only its prior right.

The statute R. S., ch. 82, § 45, does not apply to this case. That

statute only applies where payment of part is tendered and accepted in full discharge at the time. Where the payment is not tendered and accepted in full, but only on account, it constitutes no consideration for any agreement for an abridgement of the creditor's prior rights. *Bailey* v. *Day*, 26 Maine, 88 ; *White* v. *Jordan*, 27 Maine, 270 ; *Webb* v. *Stuart*, 59 Maine, 356 ; *Mayo* v. *Stevens*, 61 Maine, 562 ; *Young* v. *Jones*, 64 Maine, 563 ; *Dunn* v. *Collins*, 70 Maine, 230.

It does not appear from the evidence that the defendant proposed or would have been obliged to take any particular course in case the plaintiff did not accept the thirty per cent in full. There was no suggestion that bankruptcy proceedings were the alternative. Non constat that the defendant could have obtained a discharge in bankruptcy, or would have resorted to the bankrupt court to administer his estate.

Nor does the evidence show a case within the principle of those cases holding that, where creditors mutually agree with the debtor and with one another, to accept a percentage of their debts in full discharge, the mutual promises of the creditors to one another constitute a sufficient consideration for the promise of each. In such cases the engagement of the creditors to accept a percentage for their debts is the consideration for the giving up by each of his claim for the residue. Such a mutual engagement to reduce the aggregate amount of the liabilities of the common debtor increases his ability to pay the agreed percentage and the chances of their receiving it. But there must be a mutuality among the creditors. The creditors must join together ; must stipulate with one another. It must appear that the creditor seeking to recover his full claim had so stipulated, not only with the debtor, but with the other creditors. *Perkins* v. *Lockwood*, 100 Mass. 249 ; *Curran* v. *Rummell*, 118 Mass. 482 ; *Sage* v. *Valentine*, 23 Minn. 102 ; *Daniels* v. *Hatch*, 21 N. J. L. 391.

In this case the composition agreement did not bear the signature of the plaintiff, nor was the plaintiff's name upon the list of creditors submitted by Mr. Ware, the debtor. It does not appear that the other creditors when signing had any knowledge that the

plaintiff was also a creditor.   Mr. Ware and the signing creditors seem to have gone on and completed their arrangement, and Mr. Ware, and his attorney or assignee, to have begun making payments under it without obtaining or insisting on the plaintiff's assent.   As said in *Daniels* v. *Hatch*, supra: "Nor is it pretended that any creditor was induced to accept the compromise in consequence of the promise made by the plaintiff to sign the deed. On the contrary it seems highly probable, if not certain from the evidence, that both the composition deed and the assignment were fully executed before the alleged promise was made by the plaintiff."   Again, as said in *Sage* v. *Valentine*, supra:   "There is no evidence tending to show that there was any communication between the plaintiff and the other creditors, either directly or indirectly, or that the plaintiff and the other creditors joined together, or stipulated one with the other, in any agreement for a composition.   As respects the plaintiff then, the agreement with the defendant lacked the element of mutuality between creditors, and was therefore without valid consideration."

In this case the plaintiff's first and only act was in receiving a partial payment voluntarily made after the composition agreement had been completed and assumed to be in force.   As to the plaintiff, the attempted composition was res inter alios.   Neither the reception nor the return of this payment would have made the slightest difference to the other creditors.

No other defenses are set up, and the mandate must be,

*Judgment for the plaintiff.*