MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2020 ME 24
Docket:       BCD-19-115
Argued:       September 26, 2019
Decided:      February 25, 2020

Panel:        SAUFLEY, C.J., and MEAD, GORMAN,* JABAR, and HUMPHREY, JJ.**
Majority:     SAUFLEY, C.J., and MEAD, GORMAN, and HUMPHREY, JJ.
Concurrence/
   Dissent:   JABAR, J.

REBECCA W. BELANGER

v.

LISA M. YORKE

GORMAN, J.

[¶1]  Rebecca W. Belanger (Belanger) and Lisa M. Yorke (Yorke) each claim to have taken title to a piece of property by way of a deed delivered to her by Brad Belanger (Brad).  Brad deeded the property to his daughter, Yorke, before he deeded it to his wife, Belanger, but Belanger recorded her deed before Yorke recorded hers.  As the trial court (Business and Consumer Docket, *Mulhern, J.*) explained, "[t]his is a case about a piece of real property that a man

---

* Although not available at oral argument, Justice Gorman participated in the development of this opinion.  *See* M.R. App. P. 12(a)(2) ("A qualified Justice may participate in a decision even though not present at oral argument.").

** Although Justices Alexander and Hjelm participated in the appeal, they retired before this opinion was certified.

inherited from his parents and seems to have conveyed to both his wife and his daughter (his wife's stepdaughter) at different times during his life. . . . Both women now claim exclusive title to the property, and have sued each other for, inter alia, a declaratory judgment to that effect."

[¶2]  The complex procedural history of this case includes cross-motions for partial summary judgment and, later, a request for judgment based on a stipulated record; both of these decisions are currently before us.  In ruling on the summary judgment motions, the court concluded "as a matter of law" that 33 M.R.S. § 480, which requires the signature of a nonowner spouse on a transfer of real property in certain circumstances, was not an affirmative defense to Yorke's ownership claim.  Later in the proceedings, based on a stipulated record, the court (*Duddy, J.*) found that Brad's deed to Belanger was not supported by consideration and that, therefore, she was not a bona fide purchaser of the property for purposes of Maine's recording statute, 33 M.R.S. § 201 (2018).  Concluding that resolution of the consideration issue rendered all other contested issues moot, the court entered an order of final judgment, holding that Yorke owned the property.  Belanger challenges both of these rulings on appeal.  After reviewing the stipulated facts and the applicable law, we affirm the ruling regarding section 480, vacate the final judgment entered

on behalf of Yorke on the issue of consideration, and remand to the trial court to address unresolved issues.

## I.  BACKGROUND

[¶3]  The parties stipulated to the following relevant facts.[1]  In 1976, Brad acquired property located in West Bath (the Camp) through a deed from his parents.  Belanger and Brad were married on October 1, 1977.  This was Brad's second marriage.

[¶4]  In 1977, shortly after their marriage, Brad and Belanger entered into an oral agreement (the 1977 Agreement) by which each would deed his or her separately-owned real estate to the other as his or her joint tenant. In 1978, Belanger conveyed property on Prospect Street in Bath (the Prospect Street Property) to herself and Brad as joint tenants.  Brad did not reciprocate by deeding the Camp to himself and Belanger in 1977 or 1978.  Instead, in 1978, Brad and Belanger agreed to postpone the transfer until after his parents died. Although Brad's parents died in 1984 and 1989, Brad did not deed the property to himself and Belanger after either death.

---

[1]  Although there are slight differences between the factual record created through the summary judgment filings and the stipulated record, those differences do not affect this opinion.  We use the stipulated record to provide background for the opinion.

4

[¶5]  In 2005, Brad deeded the Camp to Yorke, his daughter from his first marriage.  Yorke did not record the deed until many years later, because she wanted to give Brad time to tell Belanger about it.  Neither Yorke nor Brad ever did tell Belanger of the deed's existence.

[¶6]  In 2016, during Brad and Belanger's mutual estate planning process, Brad executed a deed transferring the Camp to himself and Belanger as joint tenants, consistent with the 1977 Agreement.  Belanger recorded her deed on June 29, 2016.  Yorke recorded her deed on July 15, 2016.  Brad died on August 21, 2016.  He was survived by Belanger and by three adult children, including Yorke.  Yorke learned of the 1977 Agreement between Brad and Belanger after Brad's death.

[¶7]  Belanger filed her initial complaint in the Superior Court (Sagadahoc County)[2] on April 14, 2017, seeking, inter alia, a declaratory judgment establishing her as the sole legal owner of the Camp and damages for slander of title.  Yorke filed a counterclaim seeking a declaratory judgment establishing her, not Belanger, as the sole legal owner of the property and asserting a claim of undue influence.  Both parties purported to have taken title by way of the deeds delivered to them by Brad.

---

[2] On Belanger's application, the case was transferred to the Business and Consumer Docket on November 28, 2017.

[¶8]  On April 24, 2018, Belanger filed a motion for partial summary judgment with regard to her declaratory judgment and slander of title claims and seeking judgment in her favor on Yorke's counterclaims.  In that motion, she argued that as Brad's widow she had a superior claim to the property because Brad's transfer to Yorke was invalid in view of the fact that Belanger did not sign the deed as required by 33 M.R.S.A. § 480 (1999);[3] that she held superior title by operation of the Maine Recording Act, 33 M.R.S. § 201; that Yorke's deed was invalid because it failed to adequately describe the property; that Yorke was estopped from claiming a right to the property by the affirmative defenses of equitable estoppel and laches; and that Yorke's claim of undue influence against Belanger must fail as a matter of law.  Yorke countered

---

[3]  The transfer to which the section 480 argument applies occurred in June of 2005.  Thus, all relevant citations are to the statute in effect at that time, which provided, in relevant part:

> An owner of real estate may convey that real estate, or any interest in it free from any claim to the real estate by his nonowner spouse, by deed, mortgage or any other instrument, without signature of his nonowner spouse, unless:

> **1.  Nonbona fide purchaser.**  The transfer requires signature pursuant to the Title 18-A, section 2-202, subsections (1) and (3) . . . ;

> . . . .

> After that conveyance, any claim of the nonowner spouse under probate, divorce or any other laws, shall be against the proceeds of that conveyance and not against the real estate.

33 M.R.S.A. § 480 (1999).  Section 480 has since been amended, though not in any way relevant to this appeal.  *See* P.L. 2017, ch. 402, §§ A-1 to -2 (effective Sept. 1, 2019); P.L. 2019, ch. 417, § B-14.

6

with her own motion for partial summary judgment on the section 480 issue and the affirmative defenses Belanger had raised.

[¶9]  On November 2, 2018, after oral argument, the court (*Mulhern, J.*) issued an order (the Combined Order) granting Yorke a partial summary judgment as to the section 480 issue, concluding "as a matter of law that 33 M.R.S. § 480 is not an affirmative defense to Ms. Yorke's ownership."  The court determined that genuine disputes of fact remained as to Belanger's claims of slander of title, estoppel, and laches, and denied her motion for summary judgment as to those issues.  It also found that genuine disputes of material fact remained regarding Yorke's claim of undue influence and denied summary judgment on that count.

[¶10]  As the matter proceeded toward trial, Yorke sought leave to file a second motion for summary judgment, having identified a discrete legal issue that she believed could resolve the case: whether Brad's deed to Belanger was supported by consideration.  The court (*Duddy, J.*) denied this request as untimely but agreed to consider motions for judgment on the issue if the parties could agree on a stipulated record and abbreviated briefing schedule.  The parties so agreed, submitted a stipulated record, and briefed the issue.

[¶11] On March 7, 2019, the court entered a judgment on the stipulated record in favor of Yorke. The court found that Belanger provided no "new consideration" to Brad in 2016 and noted that Brad's verbal 1978 promise to transfer the property to Belanger "was unenforceable due to the statute of frauds." Based largely on those findings, the court determined that Brad's deed to Belanger "was not supported by consideration, and thus [Belanger] was not a bona fide purchaser for the purposes of Maine's Recording Act." Shortly thereafter, the court issued a final judgment, concluding that Yorke owned the real estate at issue and that, "[a]s a result of the findings of fact and conclusions of law contained in the Combined Order and Stipulated Record Order, all other claims raised by the parties are moot."

[¶12] Belanger appeals, asserting that the court erred in holding that Yorke's ownership of the property is not barred by section 480 and that there had been no consideration for the 2016 deed to her.

## II. DISCUSSION

A.    Title 33 M.R.S.A. § 480

[¶13] As discussed above, the court ruled on the section 480 issue in the context of Yorke's motion for summary judgment. "We review the grant of a motion for summary judgment de novo, and consider both the evidence and

any reasonable inferences that the evidence produces in the light most favorable to the party against whom the summary judgment has been granted in order to determine if there is a genuine issue of material fact." *Grant v. Foster Wheeler, LLC*, 2016 ME 85, ¶ 12, 140 A.3d 1242 (quotation marks omitted). A genuine issue of material fact exists "when a fact-finder must choose between competing versions of the truth, even if one party's version appears more credible or persuasive." *Id.* (quotation marks omitted). When there is no genuine issue of material fact, "we review de novo the trial court's interpretation and application of the relevant statutes and legal concepts." *Id.* ¶ 13 (quotation marks omitted).

[¶14] At the time of Brad's transfer to Yorke, there were two sets of circumstances under which a transfer of real estate to someone other than a bona fide purchaser required the signature of the transferor's nonowner spouse. 33 M.R.S.A. § 480. Relevant to this case is the provision in subsection 480(1) requiring the signature of a nonowner spouse when "[t]he transfer requires signature pursuant to [18-A M.R.S.A. § 2-202(1)]."

[¶15]  Title 18-A M.R.S.A. § 2-202(1) (1998),[4] in turn, required signatures of nonowner spouses for "[a]ny transfer under which the decedent retained at the time of his death the possession or enjoyment of, or right to income from, the property."  If an owner of real estate transferred the property without the signature of a nonowner spouse, any subsequent "claim of the nonowner spouse under probate, divorce or any other laws, shall be against the proceeds of that conveyance and not against the real estate."  33 M.R.S.A. § 480.

[¶16]  Belanger argues that Brad "retained the possession [or] enjoyment of" the Camp property at the time of his death, and thus her signature was required on the Yorke Deed.  Even viewed in the light most favorable to Belanger, however, the parties' statements of material fact do not create a genuine dispute of material fact as to whether Brad maintained possession or enjoyment of the Camp at the time of his death.  The record shows that Brad and Belanger last spent a night at the Camp in the 1980s, and although they kept a boat there, the last time the couple used the boat was "six or seven years ago"—that is, no later than 2012.  In contrast, the Yorke family used the Camp several weekends per month, and Yorke's husband lived at the Camp full time

---

[4]  In 2017, 18-A M.R.S. § 2-202 was recodified at 18-C M.R.S. § 2-208(1).  *See* P.L. 2017, ch. 402, §§ A-1 to -2 (effective Sept. 1, 2019); *see also* P.L. 2019, ch. 417, § B-14.  Again, all references are to the statute in effect in 2005, the time of the relevant transfer.  *See supra* ¶ 8 & n.3.

for a period beginning in 2015. The Yorkes had spent tens of thousands of dollars in repair and maintenance costs since 2005. Because the record does not support the conclusion that there is any genuine dispute as to whether Brad maintained the "possession or enjoyment" of the Camp property at the time of his death in 2016, Brad's 2005 gift transfer to Yorke is not the type of transfer that required the signature of a nonowner spouse pursuant to section 480. The court did not err in granting summary judgment on that issue.

[¶17] Belanger's argument also fails for a second reason, grounded in the statutory language of section 480. Even assuming for the sake of argument that the statute required Belanger's signature on the Yorke Deed, the language of the statute does not provide her with a claim against the real estate as a remedy. As noted above, section 480 provides an explicit remedy for nonowner spouses: "After [a conveyance by the owner spouse], any claim of the nonowner spouse under probate, divorce or any other laws, shall be against the proceeds of that conveyance and not against the real estate." Belanger argues that section 480 must provide an implied remedy for nonowner spouses that includes a claim to the real estate where the improper transfer is gratuitous, because the proceeds are necessarily zero in such a situation, leaving the nonowner spouse with no remedy at all. In order to avoid an illogical result, argues Belanger, section 480

must be interpreted to provide her with an affirmative defense against Yorke's ownership claim. Belanger's argument ignores the fact that the Maine Probate Code provides spouses in such a position a clear remedy by including the actual value of such gratuitous transfers in the augmented estate from which a surviving spouse may take his or her elective share. *See* 18-A M.R.S.A. § 2-202(1).

[¶18] Belanger posits an implausible reading of the plain language of section 480, grounded in an argument that, absent such a reading, spouses in her position will be left without a remedy to a legal wrong. The plain language of the statute, however, does not support Belanger's position, and a remedy does exist elsewhere in Maine law. Furthermore, even if Belanger's interpretation prevailed, the record cannot support a finding in her favor. We affirm the trial court's grant of Yorke's motion for summary judgment on the issue of Belanger's section 480 affirmative defense.

B. Consideration

[¶19] The court resolved the consideration issue on a stipulated record, which consisted of the stipulated statement of facts plus certain exhibits. "[A] record of stipulated facts does not, by itself, mean that there are no genuine issues of material fact," *Blue Sky West, LLC v. Me. Revenue Servs.*, 2019 ME 137,

¶ 16 n.10, 215 A.3d 812, and unlike in the summary judgment context, a trial court undertaking a merits analysis on a stipulated record may "draw factual inferences from that evidence and decide disputed inferences of material fact to reach a final result," *Rose v. Parsons*, 2015 ME 73, ¶ 8, 118 A.3d 220. Although we normally review with deference a trial court's factual findings, such as whether consideration existed, we review "de novo for errors of law when the parties stipulate" to a set of facts. *Christian Fellowship & Renewal Ctr. v. Town of Limington*, 2006 ME 44, ¶ 9, 896 A.2d 287.

[¶20] The trial court determined that Brad's 2016 deed to Belanger was not supported by consideration largely because Belanger advanced no "new consideration" to Brad in 2016. To support this determination, the trial court cited language from our cases explaining the familiar rule that "past consideration" is not consideration. *Cadwallader v. Clifton R. Shaw, Inc.*, 127 Me. 172, 179, 142 A. 580 (1928); *Hayden v. Russell*, 119 Me. 38, 39-40, 109 A. 485 (1920). The past consideration rule, however, is not a rule about temporal proximity, but rather a necessary connotation of the rule that the benefits and detriments on both sides of a contract must be bargained for. *See infra* ¶¶ 25-27; Restatement (Second) of Contracts §§ 71, 86 & cmt. a (Am. Law Inst. 1981). When one party has already provided a gratuitous (i.e.,

unbargained-for) benefit, that benefit cannot be consideration for the recipient's subsequent promise to pay for it, whether five minutes or five years after receiving the unanticipated benefit. When there *is* a bargain, however, the fact that the parties' performances are separated by some time does not retroactively negate the initial bargain.

[¶21] As we set forth in greater detail below, the relevant time period for determining whether Belanger's transfer to Brad was consideration for Brad's 2016 transfer to Belanger is 1977. *See infra* ¶ 27 & n.6. In other words, if in 1977 both Belanger and Brad considered that Belanger's transfer of the Prospect Street Property was "in exchange for" Brad's transfer of the Camp— whenever those transfers might take place—then Brad's 2016 deed to Belanger was supported by consideration for purposes of the bona fide purchaser protections; Belanger was not required to provide any additional consideration in 2016. Brad's intention in 2016 is therefore irrelevant except to the extent that it sheds any light on what his understanding was in 1977, and the trial court erred in basing its consideration determination solely on its analysis of Brad's and Belanger's actions and intentions in 2016.

[¶22] Furthermore, to the extent that the court also based its determination of the consideration issue on its understanding that the 1977

14

Agreement was unenforceable pursuant to the Statute of Frauds, *see* 33 M.R.S. § 51(4)-(5) (2018), the court erred. There is no need to address the Statute of Frauds or any potential exceptions to it, because Belanger is not trying to enforce a contract. Section 78 of the Restatement (Second) of Contracts provides that unenforceable promises may constitute consideration, e.g., for purposes of rendering a party a bona fide purchaser for value. *See also* Restatement (Second) of Contracts § 75 cmt. d & illus. 4-6. The enforceability of any contract between Belanger and Brad has no bearing on whether Belanger's transfer of her own property—a transfer she indisputably made— qualifies as consideration for Brad's 2016 conveyance.

[¶23] If Brad had not deeded the Camp to Belanger, and unless some exception applied, such as the part performance exception, the Statute of Frauds might have barred her from enforcing a claim that she and Brad had a contract that required him to transfer the property. *See, e.g.*, *Sullivan v. Porter*, 2004 ME 134, ¶ 11, 861 A.2d 625. But Belanger is not trying to enforce a contract; she is simply arguing, in effect, that when Brad deeded the Camp to her he was doing so pursuant to a contract, and that therefore she is a bona fide purchaser for purposes of Maine's recording statute.

[¶24]  Because neither Brad's 2016 intention nor the Statute of Frauds has any bearing on the issue of consideration, the trial court did not apply the correct legal standard to resolve this issue, and we have no choice but to vacate the judgment.  *See Christian Fellowship & Renewal Ctr.*, 2006 ME 44, ¶ 9, 896 A.2d 287.  Furthermore, as we explain below, the stipulated record is insufficient to allow us to determine—as a matter of law—whether Belanger's 1978 transfer was consideration for Brad's 2016 transfer.  Because we must remand this issue to the trial court, we take this opportunity to provide guidance to the parties and the court.

[¶25]  The parties' stipulated statement of facts establishes that, in 1977, Belanger and Brad "made an agreement to put each other's names on their separately owned properties, as joint tenants (the '1977 Agreement')."  Mutual promises to convey property interests to one another may constitute sufficient consideration for purposes of a contract or for the purpose of determining whether someone is a bona fide purchaser.[5]  *See* Restatement (Second) of

---

[5]  There is essentially no case law—in Maine or any other jurisdiction—addressing any differences between the meaning of "consideration" for purposes of contract enforceability and "consideration" for purposes of a recording statute's bona fide purchaser protections.  Courts have, however, held that the contract-law meaning of consideration does not map precisely onto the term's meaning in other contexts, such as the Internal Revenue Code.  *See, e.g.*, *Bank of N.Y. v. United States*, 526 F.2d 1012, 1015-18 (3d Cir. 1975) ("That [a decedent] may have been obliged under New Jersey [contract] law to carry out her original intention . . . does not alter the nature of her original intention [for purposes of the Internal Revenue Code].").  For purposes of this opinion, we assume that the definitions are coextensive.

16

Contracts, § 75, cmt a. ("In modern times the enforcement of bargains is not limited to those partly completed, but is extended to the wholly executory exchange in which promise is exchanged for promise."); *see also Zamore v. Whitten*, 395 A.2d 435, 443 n.3 (Me. 1978) ("In a bilateral contract, one promise is good consideration for another."), *overruled on other grounds by Bahre v. Pearl*, 595 A.2d 1027, 1035 (Me. 1991). In order "[t]o constitute consideration," however, "a performance or a return promise must be bargained for." Restatement (Second) of Contracts § 71(1). A "return promise is bargained for if it is sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise." *Id.* § 71(2). The objectively manifested intentions of *both* parties are relevant because it takes two to bargain. *See id.* § 71 cmt. b ("[I]t is not enough that the promise induces the conduct of the promisee or that the conduct of the promisee induces the making of the promise; both elements must be present, or there is no bargain."); *accord Laflamme v. Hoffman*, 148 Me. 444, 450-51, 95 A.2d 802 (1953).

[¶26]  Inducing the other person's promise need not be the primary or substantial motive for the action constituting consideration (whether promise or performance), *see* Restatement (Second) of Contracts § 81(1); likewise, a promise induced by the promise constituting consideration need not be

primarily motivated by it, *see id.* § 81(2).  Here, for instance, Belanger's promise to convey her property to Brad *may* constitute consideration for Brad's 2016 deed even if the 1977 agreement was primarily motivated by Brad's and Belanger's love and affection for each other.

[¶27]  Thus, two facts must be found to be true in order for Brad's 2016 deed to Belanger to have been supported by consideration: (1) Belanger must have made her 1977 promise or her 1978 conveyance in exchange for Brad's promise to convey his property, and (2) Brad must have intended for his reciprocal 1977 promise to convey his property to induce Belanger's promise to convey hers.[6]  Brad's intent at that time may be discerned by evidence of his statements and actions in 1977 as well as his actions related to that alleged promise thereafter.  If either Brad or Belanger viewed the 1977 agreement exclusively as a mutual exchange of gifts, rather than as "bargained-for" exchange (at least in part), then neither Belanger's promise to convey her property nor her performance of that promise in 1978 can constitute

---

[6]  Brad's intention only in 1977 is relevant, because by the time of his 1978 promise, Belanger's performance was complete, and Brad could not have intended any promise he made *after* Belanger conveyed her property to have induced her to convey the property.  *See* Restatement (Second) of Contracts § 86 (Am. Law Inst. 1981).

Belanger's intention to induce Brad's promise, by contrast, might be established either in 1977 or in 1978, because Brad made his two promises—his original 1977 promise and his revised 1978 promise—either contemporaneously with or after Belanger made her promise, so the "past consideration" rule does not apply.  *Id.*; *see supra* ¶¶ 20-21.

consideration for purposes of rendering her a bona fide purchaser of Brad's property.

[¶28]  We recognize that whether the fact that mutual promises have been made establishes, even presumptively, that each promise constitutes consideration for the other is an unsettled question in Maine.  Context matters: the evidentiary weight of the simple fact that both parties have made promises will vary depending on the parties' relationship.  *See* Restatement (Second) of Contracts § 71 cmt. c.  For instance, in a business setting, the fact that one party promises to pay money and the other party promises to render a service is very strong evidence of a "bargain."  In the context of marriage, family relationships, and even friendship, however, the motives behind a mutual exchange are more complex and more difficult to determine.  The "gift or bargain" question that bedevils courts interpreting a property transfer between family members does not lend itself to a per se rule that reciprocity indicates a bargain.

[¶29]  Accordingly, in several jurisdictions, the fact that spouses have made mutual wills does not establish, per se, that each will was made in consideration of the other.  *See, e.g.*, *Reznik v. McKee*, 534 P.2d 243, 254-55 (Kan. 1975); *Curry v. Cotton*, 191 N.E. 307, 310 (Ill. 1934) (noting, however, that "where [a joint will] is one jointly executed by the husband and wife, while in

itself not conclusive evidence of a contract, it is a very material circumstance" to the question of whether a contract exists).

[¶30]  Here, the stipulated record does not establish as a matter of law that Brad's and Belanger's mutual promises were either a quid pro quo (and thus consideration for each other) or a matter of marital obligation or perceived social propriety (and thus not consideration).  For instance, the stipulated record contains Belanger's deposition testimony that Brad's 2016 transfer was "similar to when I put his name on my house [in 1978].  *It made a couple.*  I didn't gain anything . . . when I put his name on my house, and he didn't gain anything when he put my name on his cottage."  (Emphasis added.)  On the other hand, the stipulated record states that "Belanger considered that her 1978 transfer of the Prospect Street property was in exchange for the transfer of the 2016 Deed from Brad."

[¶31]  Furthermore, the parties' use of the term "agreement" does not resolve the question.  Paragraph 22 of the Stipulated Statement of Facts states, inter alia, that Brad "delivered a deed of the Camp to [Belanger] and himself as joint tenants . . . consistent with the 1977 Agreement."  In this context, however, the word "agreement" does not imply, by itself, that both promises are supported by consideration.  The Restatement defines "agreement" simply as

"a manifestation of mutual assent." Restatement (Second) of Contracts § 3. The comments to section 3 clarify that "[a]greement has in some respects a wider meaning than contract, bargain or promise," and that there exist some "agreements which are not contracts, such as transactions where one party makes a promise and the other gives something in exchange which is not consideration." *Id.* § 3 cmts. a, c. Spouses or friends may "agree" in a colloquial sense to exchange gifts, but in many such exchanges there is no element, even minor, of quid pro quo or bargain.

[¶32] As discussed above, the stipulated record simply does not permit us to determine, as a matter of law, whether Brad and Belanger would have made their mutual property transfers even if the other one did not—because that was their understanding of their domestic partnership—or, instead, whether each spouse did so because the other spouse did as well.

[¶33] On remand, the trial court must determine whether Brad's promise was made "in exchange for" Belanger's promise. Restatement (Second) of Contracts § 71(2). The court's resolution of that issue—including its possible conclusion that the stipulated record is insufficient to allow it to make such a determination in the first instance, *see Rose*, 2015 ME 73, ¶¶ 7-8, 118 A.3d 220,

a possibility about which we do not currently opine—will determine how it should proceed.[7]

The entry is:

> The judgment on the 33 M.R.S.A. § 480 issue is affirmed. The final judgment on the issue of consideration is vacated and the case is remanded for further proceedings consistent with this opinion.

_____

JABAR, J., concurring in part and dissenting in part.

[¶34] I respectfully concur in part and dissent in part. I agree with the Court's decision to vacate the judgment holding that Belanger failed to prove that there was any consideration for the 1977 Agreement to convey each other's separately owned property into joint tenancy. *See* Court's Opinion ¶¶ 24, 33. I also agree with the Court's remand to address other unresolved issues. However, I do not believe that we should remand to the trial court to resolve the issue of consideration because I believe that the stipulated facts establish as a matter of law that there was consideration for the 1977 Agreement wherein Brad and Belanger both agreed to convey all of their individual properties into jointly owned properties.

---

[7] Because Belanger's appeal is not frivolous, we deny Yorke's motion for sanctions. *See* M.R. App. P. 13(f); *Lincoln v. Burbank*, 2016 ME 138, ¶ 46, 147 A.3d 1165.

[¶35]  We review the court's decision on a stipulated record de novo. *Mason v. City of Augusta*, 2007 ME 101, ¶ 18, 927 A.2d 1146 ("Because the facts are stipulated, we review de novo the legal issues presented to the [trial court].").

[¶36]  The stipulated facts establish that Belanger and Brad entered into an agreement wherein they agreed "to put each other's names on their separately owned properties as joint tenants (the '1977 Agreement')."  Mutual promises to convey property interests to one another constitute consideration for purposes of a contract or for the purpose of determining whether someone is a bona fide purchaser.  *See* Restatement (Second) of Contracts, § 71(1), (2) (Am. Law Inst. 1981) ("To constitute consideration, a performance or a return promise must be bargained for. . . . A performance or return promise is bargained for if it is sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise.").

[¶37]  This bedrock principle of contract law is a common thread seen throughout our jurisprudence for more than a century.  *See First Nat'l Bank v. Ware*, 95 Me. 388, 398, 50 A. 24 (1901) ("mutual promises of . . . creditors to one another [to partially forgive debt] constitute a sufficient consideration for the promise of each."); *see also A.L. Brown Constr. Co. v. McGuire*, 495 A.2d 794,

797 (Me. 1985) ("Mutual promises to exchange releases and settle claims are, themselves, adequate consideration for a contract.").

[¶38]   The parties' stipulated statement of facts states, "Soon after their marriage, [Belanger] and Brad made an agreement to put each other's names on their separately owned properties, as joint tenants (the '1977 Agreement')." In addition, stipulated facts 5, 6, and 7 indicate that Belanger and Brad agreed to create a mutual estate plan under which Belanger would receive everything Brad owned if he predeceased her, and vice versa.   The parties also stipulated that, "During their 39 year marriage, Brad and [Belanger] named each other as beneficiaries in their insurance, individual investments, and wills pursuant to the estate plan."   Belanger also established Brad as joint owner of a vehicle and her retirement account.

[¶39]   In addition, Belanger and Brad made several conveyances of real estate pursuant to the 1977 Agreement during their lifetimes.   "In 1978, [Belanger] conveyed her Prospect Street property in Bath to herself and Brad as joint tenants . . . as part of the 1977 Agreement."   In 1982, Belanger and Brad had property on Front Street in Bath conveyed to themselves in joint tenancy, in "conformity with the 1977 Agreement."   Finally, in 2016, when Brad conveyed the Camp to Belanger and himself as joint tenants, it was conveyed

24

"consistent with the 1977 Agreement." These stipulated facts establish as a matter of law that there was a mutual estate plan, a quid pro quo—not an agreement to exchange gifts without any understanding of required reciprocity.

[¶40] Belanger and Brad's agreement was much broader than Belanger's conveyance of her separately-owned Prospect Street property into joint tenancy in exchange for Brad's conveyance of his separately-owned camp into joint tenancy. The 2016 deed of the Camp by Brad to himself and Belanger as joint tenants was only one part of the "mutual estate plan." The stipulated facts indicate that Brad and Belanger characterized the transfer of the Camp as being made pursuant to the 1977 Agreement. They both executed other documents and conveyances consistent with this estate plan. They both had named each other as beneficiaries on their insurance, investments, savings, wills and personal property. These transactions were not merely an agreement "in a colloquial sense to exchange gifts." Court's Opinion ¶ 31. These facts establish as a matter of law that the 1977 Agreement was a bargained-for exchange.

[¶41] We should remand the matter to the trial court with the direction that judgment be entered for Belanger on the issue of consideration.

Christopher E. Pazar, Esq., and William J. Kennedy, Esq. (orally), Drummond & Drummond, LLP, Portland, for appellant Rebecca W. Belanger

Chris Neagle, Esq. (orally), Troubh Heisler, LLC, Portland, for appellee Lisa M. Yorke

Business and Consumer Docket docket number CV-2017-56
FOR CLERK REFERENCE ONLY