STATE OF MAINE                          SUPERIOR COURT
AROOSTOOK, SS.                          Caribou
                                        Docket No. CARSC-CV-2020-075

TOWN OF MADAWASKA          )
                          )
            Plaintiff,    )
                          )
                          )
       v.                 )             **DECISION AND ORDER**
                          )
TWIN RIVERS PAPER         )
COMPANY, LLC,             )
                          )
            Defendant     )


This matter involves the Plaintiff's Complaint for Declaratory Judgment regarding the status of the parties' "Term Sheet" real estate tax agreement. Rather than filing cross-motions for summary judgment, the matter has been submitted to the court for decision upon a stipulated record, with memorandum of law filed by both parties. After due consideration to the record as presented and the arguments of the parties, the Court finds and orders as follows:

## BACKGROUND

Defendant owns a paper mill property located at 82 Bridge Avenue in Madawaska, Maine (hereinafter the "Property"). Defendant requested property tax abatements with respect to the Property for both the 2011 and the 2012 tax years. In December of 2013, the Plaintiff and Defendant entered into an agreement, styled as a "Term Sheet," to resolve the property tax dispute (hereinafter referred to as "the Agreement"). The Agreement was drafted by Defendant on its stationary. The Agreement included a "Summary of Key Terms" and further provided that the "Parties agree to the terms

defined above and accordingly shall develop a Property Tax Agreement to be executed by both Parties within 45 days of the Effective Date of this Term Sheet." The parties did not subsequently execute a further "Property Tax Agreement."

As required by the Agreement, Defendant withdrew its property tax appeal for the 2011 tax year and the withdrew its property tax abatement application for the 2012 tax year. The term of the Agreement was "six (6) successive taxation years commencing July 1, 2011 and ending July 30, 2017." The Agreement set an "Assessed Valuation Basis (excluding BETE)" for the tax years of 2011, 2012, 2013, 2014, 2015, and 2016. Plaintiff valued the Property as set forth in the Agreement for the 2011 through 2016 tax years, and levied taxes based on these valuations. The Agreement included the provision that Defendant would not file any additional abatement requests during the term of the Agreement. Defendant paid its property taxes for the 2011 through 2016 tax years and did not file any additional abatement requests for the 2011 through 2016 tax years.

The parties were unable to reach an agreement on a *"property tax assessment base for future tax years"* by September 30, 2016. No appraisal of the Property as of April 1, 2017, was provided to the Plaintiff, and Plaintiff's 2017 taxes were committed on November 1, 2017. Plaintiff assessed the Property for the 2017 tax year at $93 million. Defendant paid its property taxes for the 2017 tax year and did not file any abatement request for the 2017 tax year.

Plaintiff did not request that Peirce Atwood LLP select an independent third party appraiser to perform a valuation of the property. Instead, Plaintiff retained MR Valuation Consulting, LLC (hereinafter "MRV"). MRV valued the Property at $225,319,000,

including $30,093,868 for exempt assets, for the 2018 tax year. Plaintiff assessed taxes for the 2018 taxation year based on MRV's valuation. Plaintiff valued the Property at $178,069,925 for the 2018 tax year. Plaintiff's 2018 taxes were committed on October 23, 2018.

Defendant filed a Complaint in CARSC-CV-2019-0127, challenging the actions of the Plaintiff relative to the 2018 tax year. By Agreement of the parties, that matter was submitted to arbitration. The arbitrator issued two decisions in the proceeding. *See, Exhibit E and Exhibit F.* The Court issued a judgment confirming the arbitrator's award in favor of Defendant establishing the just value of the Property for the 2018 tax year at $92,500,000.

Plaintiff assessed real and personal property taxes for the 2019 tax year totaling $101,750,000, which was based on the just value found by the arbitrator of $92,500,000, multiplied by Plaintiff's developed parcel ratio of 1.1.

Plaintiff assessed real and personal property taxes for the 2020 tax year totaling $101,750,000, which was based on the just value found by the arbitrator of $92,500,000, multiplied by Plaintiff's developed parcel ratio of 1.1.

Plaintiff contends that the Agreement has now expired. Defendant contends that the Agreement remains in effect and binding on the parties into the future.

## DISCUSSION

"[A] record of stipulated facts does not, by itself, mean that there are no genuine issues of material fact," *Blue Sky West, LLC v. Me. Revenue Servs.*, 2019 ME 137, ¶ 16 n.10, 215 A.3d 812, and unlike in the summary judgment context, a trial court undertaking a

merits analysis on a stipulated record may "draw factual inferences from that evidence and decide disputed inferences of material fact to reach a final result." *Belanger v. Yorke*, 2020 ME 24, ¶19, 226 A.3d 215 (quoting *Rose v. Parsons*, 2015 ME 73, ¶8, 118 A.3d 220).

In a declaratory judgment action pursuant to 14 M.R.S. §§5951-5963, "the allocation of the burden of proof . . . must be determined by reference to the substantive gravamen of the complaint. The party who asserts the affirmative of the controlling issues in the case, whether or not he is the nominal plaintiff in the action, bears the risk of non-persuasion." *Hodgdon v. Campbell*, 411 A.2d 667, 670-71 (Me. 1980). The controlling issues in this matter are whether the Agreement remains in effect and is binding on the parties. Defendant asserts the affirmative of those controlling issues. Therefore, the burden of proof rests with the Defendant.

The court must construe contracts "'in accordance with the intention of the parties, which is to be ascertained from an examination of the whole instrument. All parts and clauses must be considered together that it may be seen if and how one clause is explained, modified, limited or controlled by the others' *Am. Prot. Ins. Co. v. Acadia Ins. Co.*, 2003 ME 6, ¶ 11, 814 A.2d 989. Ultimately, [the court seeks] to give effect to the plain meaning of the words used in the contract and avoid rendering any part meaningless. *See Scott*, 2019 ME 50, ¶ 7, 206 A.3d 307. However, if [the court finds] that a contract contains an ambiguity that cannot be resolved from the four corners of the document, the interpretation of the ambiguous language becomes a question for the fact-finder to resolve by taking extrinsic evidence." *Dow v. Billing*, 2020 ME 10, P14, 224 A.3d 244, 250 (citing *Estate of Barrows*, 2006 ME 143, ¶ 18, 913 A.2d 608).

At the outset, the court notes that the Agreement was clearly not intended to address *all* components of a property tax agreement between the parties. Although both parties agreed to "develop a Property Tax Agreement to be executed by both Parties within 45 days of the Effective date of [the] Term Sheet," they never did so. *Agreement at 3.* Nonetheless, the Agreement did address some components of a property tax agreement between the parties and the Agreement brought about the end to the disputes related to the 2011 and 2012 tax years that were pending at the time of the execution of the Agreement.

Turning to what the Agreement did address, the Agreement had provisions that provided a method to calculate the assessed value for the property for the years of 2011 through 2018. The Assessed Valuation Basis was a set dollar figure for 2011 through 2016, and a mechanism was identified to set the property tax assessment base for 2017 and 2018.

The Agreement did not limit the Defendant's ability to seek an abatement for tax years after June 30, 2017. The parties agreed upon a mechanism to determine the value by way of an independent valuation by a third party firm, and the parties agreed that the independent valuation would serve as the basis for determining assessed value for the 2017 and 2018 tax years. The Agreement contains no specific provisions as to any tax years after 2018.

It is important to note that the Agreement does not set the *assessed value* of the Property. Instead, the Agreement uses the terms assessed valuation *basis* or assessment *base*. (Emphasis added). It would not have been possible for the parties to know whether

there would be property additions or deletions in the years after the execution of the Agreement. The parties included the clause that the "*property tax assessment base* shall be adjusted on a go-forward basis to reflect property additions and deletions." The court finds that clause to be included to deal with those occurrences during the years addressed in the contract, not all years into the future, without limitation.

A reading of the contract that provides a determination of the assessed valuation basis or assessment base forever is unreasonable and would likely run afoul of the Plaintiff's obligation to ensure that all taxes on real and personal property are "apportioned and assessed equally according to the just value thereof." *Me.Const. Art. IX, §9.* Further, a reading of the contract that provides that Defendant would be permitted any time after the 2016 tax year to file for an abatement[1], but the Plaintiff could not ever conduct an updated assessment is not reasonable.

Even if the term of the Agreement could be viewed as ambiguous, the court notes that it is the drafter who is asserting the wildly expansive reading of the Agreement to result in a forever contract. "The rule that an ambiguous contract will be construed more strongly against him who uses the words concerning which doubt arises is more than an arbitrary rule. Its purpose is to give effect to the intention of the parties. To the maker of an instrument is available language with which to adequately set forth the terms thereof. It is presumed that he will not leave undeclared that which he would claim as his right under the agreement. . . ." *T-M Oil Co. v. Pasquale*, 388 A.2d 82, 86 (quoting *Monk v. Morton*, 139 Me. 291, 295, 30 A.2d 17, 19 (1943)). The court finds that the ambiguity

---

[1] Although Defendant could have filed for an abatement for 2017 and 2018, the agreed upon method to define the property tax assessment base for those years made that impractical and likely unnecessary.

disappears when the language is examined in the context of the other provisions in the instrument and the circumstances that brought about the Agreement in the first place.

Judgment is hereby GRANTED in favor of Plaintiff on its complaint for declaratory judgment. The court finds that the Term Sheet has expired and does not control the property tax relationship of the parties after the 2018 tax year.

As the court has determined that the Agreement has expired by its terms, the court need not reach the other issues raised in the Memoranda of Law on the Stipulated Record.

The Clerk is directed to enter this Decision and Order upon the civil docket by reference pursuant to Rule 79(a) of the Maine Rules of Civil Procedure.

Dated: _02/07/2022_

_____
Maine Superior Court

ENTERED ON THE DOCKET _2.7.22_